## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

---

Justices of the Supreme Court during the Period comprised in
this Volume.

HON. WILLIAM D. SIMPSON, CHIEF JUSTICE.
HON. HENRY McIVER, ASSOCIATE JUSTICE.
HON. SAMUEL McGOWAN, "        "

---

## GRAVELEY vs. GRAVELEY.

1. This court concurred with the master and Circuit Judge, that the domicile of testator at the time of the execution of his will and also at the time of his death, was in England, notwithstanding a previous residence for many years and denizenship in South Carolina, and the accumulation of property and investment of moneys here.
2. While a pecuniary legacy remains unpaid the executrix holds the residuum as assets of the estate, and not as bailee for trustees to whom the residuary estate is given.
3. The executrix of an English will who is also qualified here, holds the personal property of the testator situated here as assets of his estate, and subject to the claim of an unpaid legatee resident in this State.
4. If a testator have personal property in a foreign country, the executor of the domicile has not the right, by virtue of the will alone, to go into that foreign country, and possess himself of that property, without new letters from the jurisdiction in which the property is found.

5. The new administrator may or may not be the same person as the executor of the domicile. But, inasmuch as the law of the domicile must control in the succession or distribution of the effects, whether or not the administration granted is deemed the principal one and that in the foreign country as ancillary, yet there is no privity between them, but they are independent of each other. Each portion of the estate must be administered in the country in which possession is taken and held under lawful authority.

6. The only mode of reaching such assets is to require their transmission or distribution after all the claims against the foreign administration have been duly ascertained or settled.

7. Where the will of a testator domiciled in England gave two thousand dollars to his nephew in this State, and the executrix qualified both in England and here and paid all the debts and legacies except this one, and there were assets in this State standing in the name of the executrix more than sufficient to pay this legacy, the nephew might maintain an action against the executrix in this State to recover this legacy.

8. The English courts not having construed this legacy, this court holds: That this legacy of two thousand dollars could be demanded by this nephew on attaining his majority, with simple (but not compound) interest at the rate of four per cent. (the English rate) from one year after date of testator's death, less the English legacy duty, and was not satisfied by the purchase, by the executrix in 1873, of such an amount in English consols as American paper would then buy.

9. Costs in an equity suit are within the discretion of the Circuit Judge as a part of the relief granted.

Before FRASER, J., Charleston, November, 1884.

This is the second appeal in this case, the first being reported 20 *S. C.*, 93. This appeal was from the following decree:

The questions involved in this case are very interesting and of considerable importance, and I would be glad to have more time to consider and discuss them than I am able to bestow on them on account of the pressure of other official engagements.

The action has been brought in this case by the plaintiff to recover a legacy of "two thousand dollars," "to be held in trust by the executors," and "paid with the accumulations of interest" on his arrival at the age of twenty-one years, given in the will of plaintiff's uncle, John Graveley, who died in England. The will was executed in England, in 1862, and testator died 31 March, 1865. Maria T. Graveley, the executrix, qualified on

the will in England, in May, 1865, where the original will was admitted to probate, and, in 1872, she qualified as executrix in Charleston.

There are, as alleged in the complaint, in this State, certain assets held by the said Maria T. Graveley, as executrix, and more than sufficient to pay the claim of plaintiff, even if allowed to the full extent demanded, and these assets not having been turned over to any trustees named in the will, or trustees substituted in their places, are still a part of the estate. By the advice of eminent counsel, the executrix, in 1873, in England, where she resided, laid aside and invested in English consols, such a sum of money as would, at that time, have purchased the sum of two thousand dollars in legal tender notes of the United States, and simple interest thereon at four per cent. per annum from 31 March, 1866, being one year after death of testator. This investment in consols was sold by the executrix when plaintiff arrived at age, and the proceeds, less the English legacy duty, offered to him if he would sign a receipt in full for the legacy. This plaintiff refused to do, and now claims two thousand dollars, with South Carolina interest at seven per cent., payable annually from 31 March, 1866.

The testimony, amongst other things, shows that the testator was born a British subject, that he never became a citizen of this country, while, as a simple denizen, he held title to real estate in the city of Charleston, for business purposes, having never owned a dwelling house there; that he married in Charleston a Charleston lady, and accumulated there a handsome estate; that he went to England in 1859, leaving a large portion of his estate invested in bonds and mortgages and other securities in the city of Charleston. The weight of the testimony seems to me to be in favor of the view, that when the testator left Charleston, in 1859, the change was intended to be a permanent one. He was a British subject, and had no dwelling house here, and it was no uncommon thing for Englishmen residing in England to hold American investments.

While a good deal of the testimony of Mrs. Graveley is incompetent as "communications," under section 400 of the Code, it does not appear from anything in the testimony before me, that

the important statement made by Mrs. Graveley, that the testator voted in England, was made upon information derived by her from him, so as to have been founded on any "communications" between them. It was probably so, but she does not say so in her testimony. I, therefore, find that the testator was, at the time of his death, domiciled in England, and that the administration in England is the principal or chief, and that in South Carolina is the ancillary, administration.

I assume, therefore, in the further statement of my views, that Mrs. Graveley is properly before the court only in respect to her ancillary administration, and only in the same way as if some other person, who had no connection with the administration in England, was before the court as the ancillary executor or administrator. If the matter now stood before the court on the simple allegation that there were assets in the hands of the ancillary administrator or executor, and within the jurisdiction of the court, and no more, I do not see in any of the authorities before me any ground on which the court could exercise jurisdiction in the case. I take it to be well understood, that the primary purpose of an ancillary administration is to collect the assets and pay the debts, and then transmit the residuum for distribution, under the statutes or the will, to the administrator of the domicile; and the mere fact that some of the legatees or distributees resided in the ancillary jurisdiction, and assets were found there, does not give the court jurisdiction. There must be something more.

There are, however, certain facts set up in the answer, and testimony in reference to them has been taken without objection, and it will be better to determine the questions thus raised than to order the proceedings to be amended so as to make the allegation of these matters in the complaint. With this view, then, I find in this case as matters of fact, that the executrix does not set up that there are any debts to be provided for either in the principal or ancillary jurisdiction, or that there are any legacies, either specific or of a general pecuniary character, except the one to be paid to the plaintiff in this case, which have not been provided for. It is admitted that there were funds in the hands of the English executrix, applicable to this legacy, and

that the funds for this purpose were invested in England, and that the assets in this jurisdiction are sufficient to pay this legacy, and are without any claim on them except in favor of the residuary legatees under the will. These circumstances make a very material difference, as I take it, in the matter of jurisdiction.

It was admitted in the argument that the authorities are in favor of the rule, that in some special cases residuary legatees can sue for their legacies in the ancillary jurisdiction. When it is considered that in the order of distribution and payment of legacies, pecuniary legacies stand ahead of and are payable before residuary legacies, it is not apparent what reason there should be for allowing the residuary legatees to sue, and not the pecuniary legatees. It requires an accounting by the executor before the court can determine whether there are any funds applicable to the pecuniary legacies, and it requires the very same accounting, and besides an accounting as to the payment of specific and pecuniary legacies, before the court can judicially ascertain that there is anything applicable to the residuary legacies. It is not, therefore, the liability of the domiciliary administration to account, which is the test of the jurisdiction of the court of the ancillary administration.

It seems to me that the true test to be gathered from all the cases on this subject is the fact that it is either admitted or clearly shown that no accounting is necessary in order to show that the funds in the ancillary jurisdiction are not necessary to meet demands against it in the country of the domicile. In *Cureton* v. *Mills* (13 *S. C.*, 409), it is said that "courts of ancillary administration have undertaken to distribute the estate of a foreign decedent, but this is an exceptional jurisdiction, depending on special circumstances." In *Harvey* v. *Richards* (1 *Mason*, 381), the jurisdiction was exercised in favor of "distributees." And in 1 *Story Eq. Jur.*, § 589, it is said that such courts are not incompetent to decree a final distribution to and among "the various claimants" having equities or rights in the funds.

In *Whitehurst* v. *Whitehurst* (6 *Va. Law J.*), while the general doctrine was admitted that distribution must be according to the law of the domicile, it was said that this might be done in

the courts of the local administration when all the parties reside there. *In re Hughes, Admr.*, etc. (95 *N. Y.*, 55), the local administration was in New York, and all the parties next of kin resided there, and the Pennsylvania administrator, who was the domiciliary administrator, was allowed to intervene, and failing to show that there were any creditors in Pennsylvania, the New York court proceeded to administer the estate. In *Musselman's Appeal* (101 *Pa. St.*, 165), it was held that no proceedings could be in that State, either by an administrator *d. b. n. c. t. a.*, or by a legatee, or a *cestui que trust* under the will, *until an account had been filed* in the foreign state (where was the domicile) showing a balance in his hands. In *Leach* v. *Buckner* (19 *W. Va.*, 36), it was held, that where a part of the heirs and distributees resided in Ohio, and a part in West Virginia, those in the latter State could there impeach for fraud the returns made in Ohio (the domicile), those returns being used for the purpose of diminishing the estate for which the administrator was liable in Pennsylvania.

In citing the above authorities, I have been compelled to rely on brief abstracts. They, however, lead me to the conclusion that courts of the ancillary jurisdiction have the right to order the payment of a legacy or the distribution of the funds to residuary legatees, or under the statute of the domicile, wherever it appears as a matter of fact that there are funds of the estate in the hands of the executor in the ancillary jurisdiction, unless it be made to appear that in good faith an accounting is necessary in the jurisdiction of the domicile, or that for some other purpose the equities of the parties require that the funds shall be sent there for distribution. I do not think that any such necessity has been shown here. The legacy, it is admitted, has been unpaid; the estate is amply able to pay it; no conflicting equities have been shown, requiring the control of the English courts, and there are ample funds in this jurisdiction to pay it.

The personal estate of a decedent, however, is to be regarded as having no other locality for the purposes of succession or distribution than his domicile, and the law of the domicile is also the law by which bequests of personalty are to be construed and paid, and the ancillary administrator, it seems to me by a proper

inference, should not be held to any liability in reference to payments of principal or interest out of the estate, save those by which the administrator of the domicile is governed. 1 *Story Eq. Jur.*, § 588; *Ells* v. *Holder*, 2 *McCrary*, 622. This latter case, with several others above cited, are referred to in the American notes to the case of *Blackwood* v. *The Queen* (35 *Moak Eng. R.*, 671), which itself goes to great length on this subject.

I think, therefore, that while the courts of ancillary administration have jurisdiction to order the payment of the legacy in a case like this out of the estate, that jurisdiction should be carefully exercised so as to give the legatee no more than he would be entitled to if he had sued for his legacy in the courts of the domicile. It is very important that our courts should exercise in this matter a wise discretion, especially when it seems to be the now settled policy of the State to invite all persons, whose domicile is, as to this question, foreign to this State, to invest here, in stocks and bonds and many important enterprises, capital so much needed to restore the waste places of the State. It does not seem to me wise to exercise such a jurisdiction if the effect is to be, as claimed here, to give out of the estate higher interest on legacies than can be claimed by the legatees living *in* the country of the domicile.

A very serious difficulty presents itself in principle, that the laws of other States and foreign governments are to be investigated in this court as matters of fact and not matters of *law*. The legacy is for "two thousand dollars." In ordinary cases the court is presumed to know the meaning of words, and the cases in which it is proper to resort to testimony of witnesses to explain and define their meaning are exceptional. The word "dollar" in this will is one which the court must construe for itself. All the contents of the will, I think, show that the word was used in the American sense. The will speaks at the death, but it is not material whether the word is to be construed as to its meaning then, or at its date. At the date of the will the legal tender act had not been passed, and that, as construed in *Lane County* v. *Oregon* (7 *Wall.*, 79), applies only to debts arising under contract. I cannot, therefore, accept the view of

the witness, that dollar meant United States legal tender notes, and not gold or other coin.

I am satisfied from the testimony that in England 4 per cent. was the amount of interest allowed on legacies. The investments here are not in interest-bearing securities, but are such as may or may not yield any interest, and there is no proof that any, much less larger, interest was made here. The case of *Bourke* v. *Ricketts*, in 10 *Vesey*, 330, does not seem to lay down any general rule, but depends on special circumstances, and it would not do in all cases to apply, between independent states, a rule adopted between England and her colonies.

The principle that this legacy under the English law, which is presumed to be the same as ours, was required to be invested at annual interest, is clearly deducible from the statements of the witness, and this accords with my view of the law in this State, and should therefore be applied here. Whatever benefit there may have been to the English executrix in making the investments in consols, even if, under any circumstances, that fact could be available here, has been lost because the investment in the consols themselves has been sold by her and only the proceeds offered to the legatee, and this solely in her capacity as English executrix. Besides this, there has been *no good reason* shown why in making that investment the interest was limited only as simple interest and not compound. The facts, therefore, on which this opinion of the English counsel is based are not before the court, and may not be those on which in fact the rights of the parties depended. I must therefore apply the principle, and allow compound interest from the 31 March, 1886.

I also think that the ancillary executrix should reserve sufficient funds to meet any expenses necessarily incurred by the executrix of the domicile, and that there should be reserved from this fund and remitted a sufficient amount to repay the English executrix the amount of legacy duty paid in England, with interest at the same rate and counted in the same way—amounting at the time of this decree to ($95.28) ninety-five 28–100 dollars—leaving a balance to be paid to plaintiff of ($3,947.61) three thousand nine hundred and forty-seven 61–100 dollars.

I do not think this a case for costs to be paid either by the executrix out of her own or out of the estate of the testator.

It is therefore ordered and adjudged, that the defendant, Maria T. Graveley, as executrix of John Graveley, deceased, in this county and State, do pay to the plaintiff out of the assets standing in her name in this State, as executrix, the said sum of three thousand nine hundred and forty-seven 61–100 dollars ($3,-947.61), each party paying his or her own costs. It is ordered that parties may apply at the foot of this decree for any order necessary and proper to carry out the same.

From this decree both parties appealed upon the several exceptions set forth in the opinion of this court.

*Messrs. T. W. Bacot* and *Lord & Hyde*, for plaintiffs.

*Messrs. Simonton & Barker*, for executrix.

April 22, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This case was once before in this court (see 20 S. C., 99), to which reference is made for a full statement of the facts. It will there be seen that the action was for a legacy with its accumulations of interest given to the plaintiff, John Graveley, by the will of his grand uncle, John Graveley, deceased, against Maria Torrens Graveley, the widow of the deceased, and the executrix of his will; that the testator, John Graveley, sr., though born an English subject, had lived many years in the city of Charleston, in this State, where he had married, reared a family, and acquired most of his property; but that several years before his death he took his family with him to England, and there, June 27, 1862, executed his will, and on March 31, 1865, died, leaving his will in full force. The executrix qualified on the will in England and also in South Carolina, where a large part of the property still remained, as it had been invested by the testator in his life time.

By the will the testator gave to his nephew, the plaintiff, who was, and is, a citizen of Charleston, South Carolina, a legacy in the following words: "I give and bequeath two thousand dollars each to John Graveley and Francis Porcher Graveley, the sons

of my nephew, Cowlam Graveley, to be held in trust for them by
my executors, and paid them, with the accumulations of interest,
as they respectively attain the age of twenty-one years," &c.
John Graveley, the legatee, attained the age indicated on Sep-
tember 18, 1879, and upon making application for his legacy,
was informed that the executrix, in 1873, by the advice of emi-
nent counsel, had laid aside and invested in English three per
cent. consols such a sum of money as would, on March 31, 1866
(one year after the death of testator), have purchased two thou-
sand dollars in legal tender notes of the United States, and added
to said consols a further amount, being the interest on said sum
at four per cent. from March 31, 1866, to date of investment.
That the dividends from such invested consols were reinvested by
the executrix from time to time in consols producing interest or
dividends, and that upon the plaintiff arriving at age, the said
alleged investment was sold, and the proceeds, less the English
"legacy duty," were offered to plaintiff, if he would sign a receipt
in full for the legacy. This the plaintiff refused to do, and claim-
ing two thousand dollars, with South Carolina interest at seven
per cent., payable annually from March 31, 1866, instituted this
action to recover the same against Maria Torrens Graveley, as
executrix, in the State of South Carolina.

The executrix claimed that the English was the domiciliary
administration, and that of South Carolina was only ancillary,
and that she could not be sued by a legatee for his legacy in the
ancillary jurisdiction, even if the legatee were a citizen of that
jurisdiction ; and. in addition to this defence, on general princi-
ples that this action could not be maintained against her as exec-
utrix in any jurisdiction, for the reason that, as executrix, she had
settled the estate in full, and invested the legacy of plaintiff in
British consols, and if liable at all, she was only liable in the
character of trustee, for the said consols, in which the legacy had
been invested. In the first judgment in the case this court held
that the defendant was not discharged from responsibility for the
legacy of the plaintiff by the alleged voluntary *ex parte* invest-
ment in English consols, and that she might be sued and the fair-
ness of the alleged investment inquired into "by a proceeding in
equity against the executrix as such, in any court where the

executrix is amenable to account, in this country or in England."
But inasmuch as it did not appear with sufficient clearness
whether the domicile of the testator, at the time of his death,
was in England or America, or whether at the time the action
was brought there were assets of the estate still remaining in
this jurisdiction, the court remanded the case, "with leave to the
plaintiff, if so advised, to amend his complaint by making proper
allegations, so as to make the question of the domicile of the tes-
tator at the time of his death, and as to the existence of assets,
their character, and amount of the estate of John Graveley in
the State of South Carolina when the action was commenced."

Accordingly the case went back, and it being referred without
prejudice to master Sass to report the testimony, he reported on
the question of domicile, "that when John Graveley, the testator,
left Charleston in 1859 and returned to England, he did so with
the intention of residing permanently in England, his native
country, and without any intention of returning to America to
reside there; and that he did reside in England from that time
until his death, in 1865." And upon the question of assets
within the State, he found "that there stood at and before the
commencement of this action, and there now stands, in the name
of Maria T. Graveley, as executrix of John Graveley, on the
books of the State treasurer, State of South Carolina consol
stock to the amount of $10,000; on the books of the Bank of
Charleston, National Banking Association, six shares Bank of
Charleston stock (par value $600); and on the books of the
Charleston Gas Light Company, seventy-five shares (par value
$1,875). And that the dividends, interest, and income from the
foregoing property have been, up to the present time, drawn and
received by Maria T. Graveley, as executrix of John Graveley;
and also that she, as such executrix, received the insurance money
of the buildings on said lot destroyed by fire, as aforesaid, and
the purchase money for said lot," &c.

The cause came up on exceptions to this report, and the Circuit
Judge held that the domicile of the testator at the time of his
death was in England; and that, as a consequence, the estate,
whether in England or still remaining in South Carolina, must
be administered according to the English law. But as it abun-

dantly appeared from the pleadings and facts admitted, that all the debts were paid, and that there are no legacies, either specific or of a general pecuniary character, except the one to be paid to the plaintiff, which are not provided for, and no further account for any purpose whatever is necessary, there could be no good and sufficient reason why the property here should be sent to England only to come back in the shape of a legacy to the plaintiff. And according to this view he proceeded to adjudge the rights of the parties, in obedience, however, to the English law. In doing so the judge held that the proper construction of the legacy for $2,000 was that it should be paid in gold or silver coin, or its equivalent, and that this sum, together with the English interest of four per cent. compounded, was now the true amount of the legacy, which less by the "legacy duty" paid by the executrix, he decreed should be paid to the plaintiff by the defendant, as executrix of the will of the testator, John Graveley, viz., $3,947.61, each party paying his or her own costs. The judge, however, dismissed the complaint as to William Watson, who was impleaded as original or substituted trustee under the residuary provision of the will, but denied ever having acted as such trustee; and also as to Isabella Emma Graveley and Anna Julia Graveley, daughters of, and interested in, the residuum with the defendant, Maria Torrens Graveley, with the costs of these defendants to be taxed against the plaintiff.

From this decree both parties appealed. The plaintiff also, because he was charged with the costs of the parties, as to whom the complaint was dismissed.

PLANTIFF'S EXCEPTIONS. 1. Because his honor found "that when the testator left Charleston in 1859 the change was intended to be a permanent one," and "that the testator was at the time of his death domiciled in England, and that the administration in England is the principal or chief, and that in South Carolina the ancillary, administration."

2. Because his honor found as follows: "I am satisfied from the testimony that in England four per cent. was the amount of interest allowed on legacies," and "the investments here are not in interest-bearing securities."

3. Because his honor found as follows: "I also think that the

ancillary executrix should reserve sufficient funds to meet any expenses necessarily incurred by the executrix of the domicile, and that there should be reserved from this fund and remitted a sufficient amount to repay the English executrix the amount of 'legacy duty' paid in England, with interest at the same rate, and counted in the same way—amounting at the time of this decree to $95.28—leaving a balance to be paid to plaintiff of $3,947.61.''

4. Because his honor found as follows : "I do not think this is a case for costs to be paid either by the executrix out of her own or out of the estate of the testator."

5. Because his honor ordered : "That the defendant, Maria T. Graveley, as executrix of John Graveley, deceased, do pay to the plaintiff  *  *  *  the said sum of $3,947.61, each party paying his or her own costs."

And the plaintiff also appeals from the orders of Judge Fraser dismissing the complaint against defendants, William Watson, Isabella E. Graveley, and Anna Julia Graveley, with costs.

DEFENDANTS' EXCEPTIONS.  I. That his honor erred in holding that "there are, as alleged in the complaint, in this State certain assets held by the said Maria T. Graveley, as executrix, and more than sufficient to pay the claim of plaintiff, even if allowed to the full extent demanded, and these assets not having been turned over to any trustees named in the will, or trustees substituted in their places, are still a part of the estate."

II. This was only as to an unimportant error of fact which has been corrected in the foregoing statement.

III. His honor erred in holding that it is admitted "that the assets in this jurisdiction are sufficient to pay this legacy, and are without any claims on them, except in favor of the residuary legatees under the will," the defendant having throughout denied that the securities, now held by her in South Carolina, are in law "assets" of the estate of John Graveley, and having, in her answer and otherwise, insisted that these securities are not held by her as executrix, or as a part of "the estate" of John Graveley, but, on the contrary, are held as investments of the residue of the personal estate given by testator in his will expressly upon certain trusts, and are held by defendant, Maria T. Graveley,

simply as bailee, subject to the demand of the trustees named in the will, or to the claims of their *cestui que trustent*, the residuary legatees, who reside in England.

IV. His honor erred in holding that the circumstances that the executrix does not set up that there are any debts to be provided for, either in the principal or ancillary jurisdiction, or that there are any legacies, either specific or of a general pecuniary character, except the one to be paid to the plaintiff in this case, which have not been provided for; and the circumstances "that there were funds in the hands of the English executrix applicable to this legacy, and that the funds for this purpose were invested in England, and that the assets in this jurisdiction are sufficient to pay the legacy, and are without any claims upon them, except in favor of the residuary legatees under the will," are circumstances which make a very material difference in the matter of jurisdiction, or are such circumstances as would justify the courts of South Carolina, as courts of an ancillary jurisdiction, in assuming, by reason of the mere presence of such property of foreign residuary legatees, accidentally within the territorial limits of this State, a jurisdiction over a foreign domiciliary executrix, to try such foreign executrix in South Carolina as for a breach of trust or failure to perform her duty as such executrix in England, or are such circumstances as would warrant a court of ancillary jurisdiction in seizing upon property of residuary legatees and appropriating it to pay the demands of a mere pecuniary legatee of the testator, or to make good to him such alleged default or breach of trust committed by the domiciliary executor in England.

V. His honor erred in holding that "it is not apparent what reason there should be for not allowing the residuary legatee to sue, and not the pecuniary legatees, in the ancillary jurisdiction," and should, on the contrary, have held that the residuary legatee, when allowed to maintain his action against an ancillary executor, under peculiar circumstances, sues in the ancillary jurisdiction, not for alleged breach of trust of the domiciliary executrix alleged to have occurred in his administration of the estate in the jurisdiction of the domicile, as is attempted by this plaintiff, but sues for "distribution" and for such distribution of "the

residue" as his own property, or as property in which he has an interest, or specific share, under the will; pursues the funds or property found within the ancillary jurisdiction as the *rem*—the subject matter of his suit—and sues the ancillary executor as the means of reaching and detaining the specific property (held by him to be remitted to the domiciliary executor for distribution by him under the will), whereas the pecuniary legatee has no claim for "distribution"; is bound by the will and by the law of the domicile; has no privity of estate in the assets; has no privity upon which to found his action as legatee, except through the executor of the domicile; has no claim on the property of the estate, except through such executor; has no claim as general legatee on the assets found in the ancillary jurisdiction; has no right to pursue such assets specifically, or to sue the ancillary administrator in respect of such assets, or for distribution, or as the subject matter of trust in his behalf; and has no claim whatever upon "the residue" belonging to residuary legatees in such ancillary territory.

VI. His honor erred in construing the will so as to read two thousand gold dollars, or "two thousand dollars, payable in gold."

VII. His honor erred in holding "that this legacy, under the English law, which is presumed to be the same as ours, was required to be invested at annual interest, and that such principle is clearly deducible from the statements of the witnesses."

VIII. His honor erred in holding that the law of South Carolina as to investments should be applied here in the case of this legacy.

IX. His honor erred in holding that "whatever benefit there may have been to the English executrix in making the investment in consols, even if under any circumstances that fact could be made available here, has been lost, because the investment in the consols themselves has been sold by her, and only the proceeds offered to the legatee, and this solely in her capacity as English executrix. Besides this, there is no good reason shown why, in making that investment, the interest was limited only as simple interest, and not as compound." And in holding "that the facts, therefore, on which this opinion of the English counsel

is based, are not before the court, and may not be those on which in fact the rights of the parties depended."

X. His honor erred in holding that compound interest from March 31, 1866, is to be charged against the defendant.

XI. His honor erred in taking jurisdiction of the accountability of an English domiciliary executrix for insufficient investment in a suit brought in South Carolina against an ancillary executrix by a pecuniary or general legatee.

XII. His honor erred in entertaining the complaint as if it were an action brought against the ancillary executor.

XIII. His honor erred in entertaining the jurisdiction in this case, as if it were an action brought against the ancillary executor "in respect of assets."

XIV. His honor erred in adjudging "that Maria Torrens Graveley, as executrix of John Graveley, deceased, in this county and State, do pay to the plaintiff out of the assets standing in her name in this State as executrix the sum of three thousand nine hundred and forty-seven 61-100 dollars."

XV. His honor should have dismissed the complaint and referred the plaintiff, for his alleged grievance or accountability, to the English courts, to whom the executrix was and is accountable for her actings and doings as executrix of the domicile.

We will not follow the exceptions of plaintiff and defendant, but endeavor to consider them in order as they arise in connection with the subject matter.

First. As to the domicile of the testator at the time of his death. There is a great deal of nice learning upon the subject of domicile, but we do not think it necessary in this case to go into it. Without reference to the distinction suggested between British and English born, there is no doubt that the testator came to Charleston as a foreigner, and there is no evidence that he was ever naturalized. For the purpose of enabling him to hold real estate and facilitating his business, he became a denizen under the South Carolina law, and nothing more. It is true that he immigrated to the State at an early age; that he prospered in business here, and accumulated a fortune, which was invested to a large extent in South Carolina stocks and securities; that he married and had a family of children in Charleston, where he

resided and did business as a merchant.   But it seems that, like most Englishmen, he longed to return to the mother country and enjoy his wealth and rear his family among his early friends. The master found "that he left Charleston in 1859 and returned to England with the intention of residing permanently in England, his native country, and without any intention of returning to America to reside there; and that he did reside in England from that time until his death." Upon this finding and consideration of the evidence, which is all in the brief, the Circuit Judge held that the testator, John Graveley, was domiciled in England, where he made his will and died, and we cannot say that such ruling was error.   "A man's domicile is *prima facie* the place of his residence, but this may be rebutted by showing that such residence is either constrained or transitory." 1 *Jarm. Wills,* 20, and note; 2 *Wms. Exrs.* (6 Am. Ed.), 1517, and notes.

Second. As to assets remaining in the State.   The master found "that there stood at and before the action, and that there now stand, in the name of Maria T. Graveley, as executrix of John Graveley, certain South Carolina bonds and securities (describing them to a large amount), and that the dividends, interest, and income have been, up to the present time, drawn and received by Maria T. Graveley, as executrix of John Graveley," &c. These South Carolina securities, still in the condition in which the testator left them, are in amount largely more than sufficient to pay the legacy ($2,000) of the plaintiff, and are in the possession or under the control of the defendant, Maria T. Graveley, as executrix of John Graveley. But it is denied that these securities can properly be called "assets" of the estate, for the reason that the executrix has paid all the debts and all the pecuniary legacies (except that of the plaintiff, and having "set aside" certain consols in England in full payment of that legacy), the estate of the testator should be regarded as substantially settled; and these securities, although standing in her name as executrix, are really and equitably the property of the trustees named in the will, and are now held by the executrix "simply as bailee, subject to the demand of the trustees, or to the claims of their *cestui que trustent,* the residuary legatees, who reside in England."

2

We cannot accept this view. These securities certainly were assets when the executrix took out letters testamentary in this State, by virtue of which alone she was enabled to control them. If so, when did they cease to be "assets"? They were never transferred to herself as executrix in England. We hear of no final settlement or receipt of the trustee or the discharge of the executrix. Mr. Adams says: "It is not until the debts and legacies are paid and the residue ascertained and appropriated, or until some legacy has been set apart from the general fund, that his representative character (executor) ceases, and he becomes a trustee of such residue or appropriated legacy, and is subject, in respect of it to the ordinary rules respecting trust property." *Adams Eq.*, *251. It will be seen that the view suggested assumes that the defendant fully discharged herself as executrix by the purchase of a certain amount of consols in England, and the tender of "the result" of their sale, which is the very question in the case, if it was not decided by the former judgment in the case. As we understand it, an executor continues to hold his office until all his duties as executor have been performed. *Dickerson* v. *Smith*, 17 *S. C.*, 289.

This may be the proper connection in which to make another remark. We do not regard this as an action in this jurisdiction to make the executrix personally liable for alleged wrong in making "an insufficient investment" in England as to the consols purchased and afterwards sold by her, but simply as an action to enforce payment of a legacy withheld, without noticing the transaction as to the consols or making any charge in regard to it, except to impeach its fairness and legality, when it is interposed as an obstacle in the way of his recovery. As we understand it, the action is for the legacy against the executrix in respect of assets within the State, precisely as a South Carolina creditor might bring his action here against the executrix. If she have no assets within the jurisdiction, she could plead *plene administravit*, but if she have such, the recovery would follow; to that extent, and in that manner, this action is "in respect of assets."

Third. This brings us to the most important question in the case. That is, the domicile of the testator being in England, and

his executrix having qualified on his will both in England and in South Carolina, whether the plaintiff, a citizen of this State, may, in the courts of this State, sue the executrix and recover a pecuniary legacy, there being ample assets here to pay the same ; or whether his prayer for relief here must be refused, the assets transmitted to England, and he required to go there and make his claim in that jurisdiction. As said by Judge Story in the great case of *Harvey* v. *Richards*, 1 *Mason*, 408 : "This is a question involving the doctrines of national comity, or, what might be more fitly termed, international law. And looking to it as a question of principle, it would not seem to be attended with any intrinsic difficulty. The property is here, the parties are here, and the rule of distribution is fixed. What reason, then, exists why the court should not proceed to decree according to the rights of the parties ? Why should it send our own citizens to a foreign tribunal to seek that justice which it is in its own power to administer without injustice to any other person ? I say, without injustice. It may be admitted that a Court of Equity ought not to be the instrument of injustice ; and that if in the given case such would be the effect of its interposition, it ought to withhold its arm."

There is certainly some want of clearness in the authorities as to the liabilities and duties of domiciliary and ancillary administrators, and the precise line of demarcation between them. For the sake of brevity, we may assume several propositions as settled. We take it as settled : 1. That if a testator have personal property in a foreign country, the executor of the domicile has not the right, by virtue of the will alone, to go into that foreign country and possess himself of that property without new letters from the jurisdiction in which the property is found. *Dial* v. *Gary*, 14 *S. C.*, 573. 2. That the new administrator may, or may not, be the same person as the executor of the domicile. But whether or not, inasmuch as the law of ·the domicile must control in the succession or distribution of the effects, the administration granted there is deemed the principal or primary one, and that in the foreign country as ancillary, yet there is no privity between them, but they are independent of each other. "Each portion of the estate must be administered in the country in

which possession is taken and held under lawful authority." 3 *Wms. Exrs.*, § 1664. 3. That the only mode of reaching such assets is to require their transmission or distribution, after all the claims against the foreign administration have been duly ascertained or settled. "The residue is transmissible to the home administration only when a final account has been settled in the proper tribunal where the new administration is granted, upon the equitable principles adopted by its own law in the application and distribution of the assets found there." *Story Confl. Law*, § 513; 3 *Wms. Exrs.* (6 Am. Ed.), 1664, and notes.

These points being taken as settled, it is manifest that the question of importance is, as to what claims may be asserted in the ancillary jurisdiction before the residuum is ascertained and transmitted. It is conceded on all sides, that the ancillary jurisdiction will not transmit the property found there until all the domestic creditors are provided for. But it is contended that the principle on which the creditors are paid, does not embrace domestic legatees; for the reason that they derive their claims from the bounty of the testator, and therefore, under all circumstances, must go to the home administration. We believe it is true that, as a rule, legatees go to the administration of the domicile, but, as it strikes us, not for the reason suggested. Although a legatee is a volunteer, the duty to pay him, if there are assets, is none the less obligatory on that account. But for the reason that there may not be sufficient assets, that his legacy may have to abate to pay debts, and that a general settlement and marshalling of assets may be necessary, it is considered to be safe, convenient, and orderly that, as a rule, the legatee should go to the home administration.

But there are well established exceptions to this rule, proceeding, as it seems to us, upon the principle that when the general estate has been settled, and there is no need of further account, an exceptional case has arisen, and the reason of the rule ceasing, the rule itself ceases. There are numerous cases in which the ancillary jurisdiction has entertained actions in behalf of citizens, who were mere volunteers. See *Harvey* v. *Richards, supra;* *Cureton* v. *Mills*, 13 *S. C.*, 410, and other cases cited by the Circuit Judge. It is not denied that these were cases of mere

volunteers, but then another modification is suggested, that in all these cases the parties were distributees or residuary legatees. If the fact be so, why should that make the difference, unless the circumstance of their being residuary was taken as evidence that the estates were already settled and no further account necessary?

If this is the feature which makes residuary legacies exceptional, the one before us—although demonstrative in form—is in character residuary, in the sense that, the estate being settled, it is the only liability remaining. The legacy is fixed in amount and there are assets, it must certainly be paid in full, and the only question is, where shall it be paid? Suppose the testator had given to the plaintiff, not two thousand dollars, but one of his South Carolina State bonds of the denomination of $2,000, would this court, under the circumstances, be required to transmit that bond to England, really for no other purpose than to make the plaintiff go there to receive it from the defendant in her character of domiciliary executrix? But without pursuing this, Judge Story in stating the rule makes no reference to any such distinctions betwen residuary and other legatees. He says: "Still, however, the new administration is made subservient to the rights of creditors, legatees, and distributees, who are resident within the country where it is granted; and the residuum is transmissible  *  *  *  only when a final account has been settled in the proper tribunal, where the new administration is granted, upon the equitable principles adopted by its own law in the application of the assets found there." *Story Confl. Law*, § 513, and notes.

We cannot say that the Circuit Judge erred in holding that "courts of the ancillary jurisdiction have the right to order the payment of a legacy or the distribution of funds to residuary legatees, or under the statute of the domicile, whenever it appears as matter of fact, that there are funds of the estate in the hands of the ancillary jurisdiction; unless it be made to appear that in good faith an accounting is necessary in the jurisdiction of the domicile, or that for some other purpose the equities of the parties require that the funds shall be sent there for distribution."

Fourth. As we do not feel authorized to dismiss the com-

plaint, it is necessary to decide all the questions in the case.   We would be pleased to escape this responsibility as the law of the domicile (England) must be applied.   We undertake to do so with diffidence arising from a conscious want of familiarity with the English law.   The terms of the legacy, however, are plain and simple.   The bequest gave directly to the plaintiff two thousand dollars ($2,000), to be held by the executors until he attained the age of twenty-one years, and then with the accumulations of interest to be paid to him.   Both the amount and time of payment were fixed, and it would seem that no question could arise about it, except possibly as to the interest.   But the executrix claims that in 1873, some seven years after the legacy had been in her hands, bearing interest under the English law at four per cent., she, under the advice of eminent English counsel, invested such a sum of money as would have purchased seven years before (1866) legal tender notes of the United States of the nominal value of $2,000, but which at that time were considerably under par ; and, adding the interest at four per cent. down to the time of the transaction, "laid aside" these three per cent. consols as the legacy of the plaintiff; and that when he came of age, these consols were not offered to him, but sold and "the proceeds," less the English "legacy duty," tendered to him in full payment.

It has never been decided by an English court, that the amount thus tendered was the whole legacy of the plaintiff.   If it had been, we would of course, with proper deference, conform to that judgment, but the matter is now before the court as an original question.   As to the currency in which a legacy is to be paid, the intention of the testator must furnish the rule. 2 *Wms. Exrs.*, 1433.   This legacy was given by the testator to his nephew, an American born, though then under age and living with his father at Charleston.   It was expressed in dollars, and not to be paid until the nephew reached the age of twenty-one years. The will was executed in England, before the national currency of the United States (which growing out of the late war was abnormal) had come into existence ; and we are not at liberty to conclude that the testator foresaw that there would be such paper currency in the United States, or contemplated the possi-

bility of his executrix satisfying the legacy in such currency at a discount, before the time indicated for its payment.

We cannot doubt that when the testator said "dollars," he meant real dollars in coin, or its equivalent, and not mere paper promises to pay dollars, rising or falling in value according to circumstances. If this is, in all respects, an English legacy, how could it be discharged by a purchase of consols with American paper currency which were never a legal tender in England? It does not seem consistent to consider it an English legacy as to interest, investment, &c., and yet allow payment in advance of the time, and in a depreciated paper currency not recognized in England. The plaintiff, when he reached full age, was not, as it seems to us, bound to accept what was tendered by the executrix as his legacy, and is now entitled to recover two thousand dollars in coin or its equivalent, with the proper accumulations of interest.

Fifth. Then as to the rate and manner of calculating the interest. It seems that the rate of interest upon a legacy allowed by the English law is four per cent., to be computed upon the principal only and not upon the principal and interest, but under particular circumstances the court will allow the legatee compound interest, as where there is an express direction in the will that the executor shall lay out the fund to accumulate, and he neglects to do so. 2 *Wms. Exrs.*, 1433. The phrase "accumulations of interest" may seem to indicate somewhat vaguely the idea of interest on interest, but there is no express direction in the will that the executrix should invest the legacy in any particular securities, or indeed to invest it at all, and as we have proceeded on the view that in fact there was no valid investment, we hesitate to require compound interest. See *Robinson* v. *Robinson*, 1 *DeG. M. & G.*, 247, cited and commented on in 3 *Wms. Exrs.*, 1815. Our own court is also disinclined to charge executors or trustees with compound interest. *Baker* v. *Lafitte*, 4 *Rich. Eq.*, 392. Upon the whole, we think the plaintiff should recover two thousand dollars with simple interest thereon at the rate of four per cent., from one year after the testator's death (March 16, 1866) until paid, less whatever may be the proper "legacy duty" on the amount.

Costs in an equity suit are within the discretion of the chancellor as a part of the relief granted, and in accordance with this general rule upon the subject we will not interfere with his decree in that respect.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, except as to the interest chargeable upon the legacy, and that the cause be remanded to the Circuit Court, in order that the exact amount may be ascertained and adjudged according to the conclusions herein announced.