F. W. HUGHES v. THE COMMISSIONERS OF CRAVEN COUNTY.

*Municipal Corporations—Debts of Counties, when Collectible— County Commissioners—Constitution—The Code—Property of Counties Necessary for Public Purposes—Railroad Stock— Mandamus—Equitable Fi. Fa.*

1. In an action for debt of a county contracted in 1886 against the Board of County Commissioners, it appeared that the county owned a considerable amount of valuable railroad stock, and the complaint alleged that it was not necessary, used or useful in the discharge of its corporate functions. It further appeared that the county was largely in debt, and had no property other than that mentioned, except what was necessary for its public functions. The plaintiff asked for judgment condemning a sufficient amount of said stock to satisfy the judgment. The plaintiff omitted in his complaint to refer the Court to the *private* law which permits the county to subscribe to the capital stock of said railroad: *Held*, that the complaint did not state a sufficient cause of action.

2. The collection of the debts of a municipal corporation cannot be allowed to cripple its capacity to discharge its public functions.

3. Under the Act of 1868, ch. 20 [*The Code,* § 707 (5 and 7)], a county can only acquire and hold property for necessary public purposes and for the benefit of all its citizens, and principles of public policy prevent such property from being sold under execution to satisfy the debt of an individual.

4. Ordinarily, the only remedy of a judgment creditor against a county is a writ of *mandamus* to compel its Commissioners to levy a tax to pay the debt.

5. A writ of *mandamus* will be granted only where one demanding it shows that he has a specific legal right, and has no other specific legal remedy adequate to enforce it.

6. An action may be maintained against the County Commissioners establishing a debt against the county without asking for a writ of *mandamus*, where it appears that the county has property subject to trusts, or such as can be reached only by proceedings supplemental to execution.

7. Where it appears that a *mandamus* has been answered by the County Commissioners and proven unavailable, because the constitutional limit of taxation has been exhausted to meet the current expenses; and it further appears that the county holds real estate, or other property not used or needful for its public functions, and, for any reason, such property could not have been subjected, except by an equitable *fi. fa.*: *It seems* that such property can be subjected for the discharge of the debt of a judgment creditor against the county, though it cannot be levied on and sold under execution.

This was a CIVIL ACTION, tried before *Womack, J.*, at February Term, 1890, of Craven Superior Court, on the complaint and demurrer thereto *ore tenus*, with motion by the defendant to dismiss the action. Motion allowed and judgment that the action be dismissed and against plaintiff for costs, from which judgment the plaintiff appealed.

The plaintiff alleged in his complaint—

1. That at the May Term, A. D. 1886, one Joseph Nelson, in an action properly instituted and prosecuted in the Superior Court of said Craven County, recovered a judgment against the defendant—the Board of Commissioners of Craven County—for $1,518.54, with interest thereon from the 14th day of May, 1886, and the costs of said action, as will more fully appear by reference to the record of said judgment in the said Court, in Judgment Docket "C," page 236, No. 3,907, which judgment was obtained on indebtedness of said defendant, contracted since the adoption and ratification of the present Constitution of North Carolina.

2. That on the 23d day of November, 1887, the said Joseph Nelson transferred and assigned the said judgment to the National Bank of New Bern, to secure the payment of the indebtedness of said Nelson to said bank, as plaintiff is informed and believes.

3. That thereafter the said Joseph Nelson assigned his interest in said judgment to Pattie S. Nelson, his wife, as plaintiff is informed and believes.

4. That on the __ day of _____, 1888, the said National Bank of New Bern and said Joseph Nelson and Pattie S.

Nelson, his wife, duly bargained and sold and transferred and assigned for value to the plaintiff the said judgment, and the plaintiff is now the sole *bona fide* owner of the said judgment.

5. That the plaintiff has duly notified the said Board of Commissioners of Craven County that he is the owner of said judgment.

6. That no part of the said judgment has been paid.

7. That the said defendant, the Board of Commissioners of Craven County is largely in debt, and has no property other than that required to carry on the public business, except as hereinafter stated, and that it takes all the money that defendant is allowed to collect from taxation to pay the current expenses of carrying on the county government as required by law, as plaintiff is informed and believes.

8. That the Atlantic and North Carolina Railroad Company is a corporation created by the laws of North Carolina, and is now engaged in carrying on business on its railroad running from Morehead City to Goldsboro, in the said State, as is allowed and required by its charter, to which reference is made.

9. That the said railroad company is composed of a large number of persons who own shares of its capital stock, which said shares of stock are valuable property.

10. That the defendant, the Board of Commissioners of Craven County, own and hold twelve hundred and ninety-three shares of the said capital stock of the said Atlantic and North Carolina Railroad Company (par value $100 per share), which said stock is worth a large amount of money, as the plaintiff is informed and believes.

11. That there has never been any dividends declared on said stock by said Atlantic and North Carolina Railroad Company, as plaintiff is informed and believes.

12 That the capital stock of said railroad company owned by the said Board of Commissioners of Craven County as

aforesaid, is in no manner necessary, nor is the same used, nor can be used, for the purpose of carrying on or performing its functions as a municipal corporation, or performing any of its duties as such corporation, as plaintiff is informed and believes

Therefore the plaintiff demands judgment—

1. That a sufficiency of the said capital stack of said Atlantic and North Carolina Railroad Company, so held and owned by the said Board of Commissioners of Craven County, be condemned and sold to pay the said judgment owned by plaintiff as aforesaid.

2. That a receiver be appointed to take and sell said capital stock, or a sufficiency thereof, to pay off said judgment and that out of the proceeds of said sale he pay off and discharge said judgment.

3. That the defendant, the Atlantic and North Carolina Railroad Company, be required to transfer on its books, to the purchaser or purchasers thereof, the stock that may be sold as aforesaid.

4. That the defendant, the Board of Commissioners of Craven County, be enjoined from disposing of any of its said stock until said judgment is paid, and that plaintiff have a lien on said stock until said judgment is paid, to secure the payment of the same.

For such other and further relief as plaintiff may be entitled to, and for costs.

The defendant moved for judgment *ore tenus* on the ground that the complaint did not state facts sufficient to constitute a cause of action. Motion granted. Plaintiff excepted and appealed.

*Mr. M. De W. Stevenson*, for plaintiff.
*Mr. Clement Manly*, for defendant.

AVERY, J.—after stating the facts: A municipal corporation exercises governmental duties under the powers dele-

gated to it by the sovereign State, and cannot be destroyed or deprived of capacity to subserve the public purposes for which it was brought into existence, except by its creator. Hence it has been held that the Congress of the United States could not pass a law levying a tax on the revenues or income of a town or city within one of the States, because the right to impose such a tax would involve the power to cripple or destroy the corporation, and would be as much a usurpation as levying a tax on the revenues of the State itself. *United States* v. *Railroad,* 17 Wallace, 322. But the State, of course, has the authority to prescribe what property a county or town may acquire, to provide specifically how its indebtedness shall be paid, and to subject all or a portion of its property to sale under execution, or in any other mode, at the instance of a creditor.

In the absence of special statutory regulations it has been declared upon principle, says DILLON, that the right to recover judgments and enforce them by execution, arose, by necessary implication, out of the privilege of suing and being sued, and that execution, when issued, could be levied upon strictly private property of the corporation, but not upon "property owned or used by the corporation for public purposes, such as public buildings, hospitals, cemeteries, fire-engines and apparatus, and water-works," and further, that judgments should not operate as liens upon any land or interest in land belonging to municipal corporations, except such as may be subject to sale under the execution. 2 Dillon on Mun. Corp., § 576 (446). On the other hand, Freeman (in his work on Executions, § 22, vol. 1), says: "A judgment against a county or a municipal corporation is, ordinarily, no more than the mere establishment of a valid claim, which it is the duty of the proper officers to provide means of payment out of the revenues of the defendant. It is error to award or issue execution on such judgment. This rule is not of universal application." The same author,

however (vol. 1, § 126), says that, where a different rule prevails from that announced by him, "property held for public uses, such as public buildings, streets, squares, parks, promenades, wharfs, landing-places, fire-engines, hose and hose-carriages, engine-houses, engineering instruments, and, generally, everything held for governmental purposes, cannot be subjected to the payment of the debts of a city." It is universally conceded that public revenues of a city or county cannot be seized and subjected to the payment of its debts, for the manifest reason that "to permit such seizure would necessarily lead to a suspension of the governmental functions of the corporation almost as effectually as the repeal of its charter," or the act creating it.

In the Circuit Court of the United States it was held to be "a general principle of law that the private property of municipal corporations (*i. e.*, that which is not necessary to the performance of the functions of government) may be seized and sold for the payment of debts." *Hart* v. *New Orleans*, 12 Fed. Rep., 292.

In the case of *New Orleans* v. *Insurance Co.*, 23 La. Ann., 61, the Supreme Court of Louisiana held that the bonds of another corporation owned by the city of New Orleans were not essential to the existence of the municipality, nor to the useful and proper exercise of its functions, and were liable to be seized and sold under execution to satisfy a judgment against the city.

The Supreme Court of Alabama outlined the method of proceeding against municipal corporations, as follows: "But if the city owns private property not useful or used for corporate purposes, such property may be seized and sold under final process, precisely as similar property of individuals is seized and sold." *Birmingham* v. *Ramsey*, 63 Ala., 352.

The Supreme Court of West Virginia (in *Brown* v. *Gates*, 15 W. Va., 153) said, after citing with approval 1 Dil. on Corp., §§ 64 and 65, when the question was left entirely open

by statute, that, "on principle, a municipal corporation should be exempt from liability of this character (viz., by garnishment), with respect to its revenues and the salaries of its officers, but where it owes an ordinary debt to a third person, the mere inconvenience of having to answer as garnishee furnishes no sufficient reason for withdrawing it from the reach of remedies which the law gives to creditors of natural persons and private corporations." That Court also lays down the rule in reference to classes of property subject to and exempt from seizure under execution just as it is stated by DILLON.

The Court of Appeals of New York, after a very elaborate discussion of the whole subject, reached the conclusion, in substance (though it was said *obiter*), that property not useful or used for city governmental purposes, including even real estate, was not, like the revenues, the parks, public squares, &c., free from the lien of a judgment or liability to be subjected for its payment. *Darlington* v. *Mayor*, 31 N. Y., 164. See also *Holladay* v. *Frisbie*, 15 Cal., 630.

But, in *Gooch* v. *Gregory*, 65 N. C., 142, Justice DICK, delivering the opinion of this Court, after announcing that an execution cannot be issued, at the instance of a creditor, against a county, summarizes the powers granted to counties in North Carolina and the legislation from which those powers are derived, as follows: "Its power to contract debts and levy taxes is set forth in the Constitution, Art. 7. Under the Act of 1868, ch. 20 [*The Code*, § 707 (5 and 7)], a county may 'purchase and hold land within its limits and for the use of its inhabitants,' may purchase and hold such personal property as may be necessary to the exercise of its powers, and make such order for the disposition or use of its property as the interests of its inhabitants require. Thus it appears that a county *can only acquire and hold property for* necessary *public purposes and for the benefit of all its citizens,* and the plainest principles of public policy prevent such property

from being sold under execution for the advantage of an individual."

The plaintiff could not, therefore, under the rule established by this Court, insist upon issuing execution and selling the railroad stock. It is well settled, also, that, ordinarily, the only remedy of a judgment creditor of a county is a writ of *mandamus* to compel its Commissioners to levy a tax to pay the debt. *Gooch* v. *Gregory, supra;* 2 Dillon on Mun. Corp. (3d ed.), §§ 855 and 856; *Pegram* v. *Commissioners,* 64 N. C., 557; *Lutterloh* v. *Commissioners,* 65 N. C., 403; *Rogers* v. *Jenkins,* 98 N. C, 129. Where a plaintiff brings his action to recover the debt, and, in his complaint, demands a *mandamus,* as well as judgment for the debt, the Courts issue first an alternative *mandamus,* and if the answer to it be insufficient, a peremptory mandamus is allowed. *Frye* v. *Commissioners,* 82 N. C, 304.

The writ of *mandamus* will be granted only where one demanding it shows that he " has a *specific legal right* and has no other specific remedy adequate to enforce it." *State* v. *Justices of Moore,* etc., 2 Ired., 430; *Winslow* v. *Commissioners,* 64 N. C., 223; Toppins on Mand., 18; *Biggs, ex parte,* 64 N. C., 202. Under the general rule, a creditor is restricted to that remedy in the collection of a claim reduced to judgment against a county, because he cannot seize the revenues of the county, or levy upon and sell property essential or useful for corporate purposes without putting in jeopardy the very existence of the corporation, and the presumption is, in the absence of specific information, that the corporation holds no property not used or needed for public purposes, and has no means of meeting its indebtedness except out of the excess of its revenues over its necessary current expenses.

In *Winslow* v. *Commissioners,* 64 N. C., 218, Justice ROD-MAN, in a very elaborate discussion of the question whether a debtor could maintain an action against the County Commissioners for judgment establishing his debt without ask-

ing for a writ of *mandamus*, suggests that where property of a county liable for its debts may be subject to trusts, or where it has property that can only be reached by proceedings supplemental to execution, and that must, under our former practice, have been subjected by filing a creditor's bill, or by invoking the aid of a Court of Equity in some manner, a writ of *mandamus* would not, from its very nature, be the appropriate remedy. *Rand* v. *Rand*, 78 N. C., 12; *Coates* v. *Wilkes*, 92 N. C., 376; *Hinsdale* v. *Sinclair*, 83 N. C., 338.

In *Coates* v. *Wilkes, supra,* Justice MERRIMON says that proceedings supplemental to execution are "a substitute for, and take the place of, the methods of granting relief in equity in favor of a judgment creditor as against his judgment debtor, after he had exhausted his remedy at law by the ordinary process of execution," upon a return of *nulla bona.*

In *Hinsdale* v. *Sinclair, supra,* the rule is laid down that the affidavit in such proceeding must show three facts—(1) a want of known property liable to execution; (2) want of an equitable interest subject to the lien of the judgment; (3) existence of property unaffected by lien of the judgment, and not subject to levy. As already intimated by us, a writ of *mandamus* issues as a matter of course on application of the judgment creditor of a county, because no execution can issue against the county, and no lien attaches upon its real estate used for corporate purposes, according to the ruling of this Court, and, above all, because a county is presumed to hold only property necessary for the discharge of its public functions, and its revenues, which are applicable, primarily, to the payment of its current expenses.

It seems, therefore, that where a judgment creditor shows (1) that a writ of *mandamus*, which was granted to him as a legal remedy in lieu of execution, has been answered by a county and proven unavailable, because the County Com-

missioners say that they have levied a tax up to the Constitutional limit, and the whole fund arising from the levy is necessary to meet the legitimate current expenses of the corporation; (2) that the county holds real estate not used or needful for the proper discharge of its public functions, or any other property not necessary or useful for corporate purposes, and especially where, for any reason, such property could not have been subjected to the payment of the debt except by means of an equitable *fi. fa.* where legal and equitable remedies were administered separately, if it had been held, in the same plight and condition, by an individual. In the case of *Gooch* v. *McGee*, 83 N. C., 64, Chief Justice SMITH, in discussing the liability of a public corporation, quotes, with approval, the language of WOODARD, J., in *Railroad Co.* v. *Caldwell*, 39 Penn., 337, as follows: "Lands bought, and not dedicated to corporate purposes, are bound by the lien of judgments, and are liable to be levied in execution, and sold by the Sheriff in the same manner, and with the same effect, as the land of any other debtor. As to land which has been appropriated to corporate objects, and is necessary for the full enjoyment and exercise of any franchise of the company, whether acquired by purchase, or by exercise of the delegated power of eminent domain, the company hold it entirely exempt from levy and sale, and this on the ground of prerogative or corporate immunity, for the company can no more alien or transfer such land by their own act than a creditor by legal process, but the exemption rests on the public interests involved in the corporation." So that it appears that precisely the same reason is assigned for protecting land from a separate sale under execution, and for treating as a part of the franchise land necessary and used for corporate purposes by a railroad company, as is given for exempting property devoted to public purposes by a municipal corporation. It was because of the necessity of sustaining this principle for the convenience of the

public, that this Court, in the case last cited, in effect overruled *State* v. *Rives*, 5 Ired., 297. In section 707 (7) of *The Code* authority is now given to the Board of County Commissioners "to purchase land at any execution sale where it shall be deemed expedient to do so, to secure a debt due the county;" and it is further provided that "the deed shall be made to the Board of Commissioners, and the Board may, in its discretion, sell any land so purchased." Suppose that the Board of Commissioners should buy and improve town or city property, collect the rents and hold it to await the improvement of the town, and meantime evade the payment of outstanding judgments against the county on the ground that the tax levied up to the limit would not yield more than a sufficient revenue to support the county government. Surely, in that case, the judgment creditor could reach and subject such real estate, in some other way, if not by sale under execution. But in our case, the plaintiff omits to refer us, in his complaint, to the private law which permitted the county of Craven to subscribe to the capital stock of the Atlantic and North Carolina Railroad Company, and, therefore, we are not presumed to know whether the county authorities have the power to sell the railroad stock, or whether the statute subjects the stock to any lien, such as to require the presence of any other parties interested in the proposed relief, or possibly to preclude the Court from granting it. The authority to subscribe to the capital stock of a corporation is not one of the powers usually granted to counties, and it may be that the Legislature encumbered the stock in some way, or declared that it should be held, and any dividends arising from it must be devoted to some corporate purpose. The plaintiff ought to have described the nature of the property which he wishes to subject so fully that the Court should understand the precise authority given to the county, and how the shares of stock are held. Having undertaken to show his right to the remedy asked,

or to some relief, he should have set forth in his complaint such allegations of fact as, if admitted or proven, would have established his right to have the stock sold, and, as between himself and defendant, to have the proceeds applied to the discharge of his judgment. The plaintiff having failed to do this, we think that there was no error in holding that the complaint did not state facts sufficient to constitute a cause of action. It is not necessary to decide whether relief could be granted on proper allegation in this action in any contingency. There was no error.

Judgment affirmed.