It is settled law in this State that railway companies are private, as distinguished from public, corporations. Hughes v.Commissioners, 107 N.C. 598; Durham v. R. R., 108 N.C. 399. But when the power of eminent domain is delegated for the purpose of enabling other companies to discharge duties for the public benefit, they occupy a different relation to the State and the people from that of ordinary private corporations, the powers of (945) which are given and exercised exclusively for the profit or advantage of their stockholders, and are therefore called quasi-public, though they fall within the classification of private corporations. Hence, it has been declared that these companies have no more authority to sell, separate from the franchise, any real estate belonging to them and dedicated to strictly corporate purposes than a judgment creditor of a county has to subject the land on which the public buildings of the county are located. Gooch v. McGee, 83 N.C. 64; Hughes v. Commissioners, supra;Cox v. R. R., 10 Ohio, 372; R. R. v. Colwell, 37 Pa., 337; Foster v.Fowler, 60 Pa., 27. Indeed, in Gooch v. McGee, supra, the clearest intimation is given, after approving the principle announced in the cases just cited, that, but for the fact that the statute had dispensed with the necessity for doing so, this Court would have overruled S. v. Rives,27 N.C. 227. There is a consensus of legal opinion everywhere that quasi-public corporations cannot sell themselves, and that their creditors cannot subject at execution sale, except as incident to the franchise, any property which is necessary for corporate purposes. If they cannot denude themselves of the means of discharging their duties to the public, can they by a lease of the franchise and appurtenant property rid themselves of responsibility for the performance of the duties which are imposed as inseparable from privileges granted them by the Legislature? *Page 558 
The question of the authority of the lessor company to "farm out" its franchise and property to the lessee is no longer an open one. S. v.R. R., 72 N.C. 634. The plaintiff, after alleging that the North Carolina Railroad Company had leased its road to the Richmond Danville Railroad Company, will not be heard to insist that we shall (946) refuse to take notice of the adjudications of this Court in reference to the validity of the lease, unless the charters should be exhibited.
The defendant's counsel contend that the authority to lease being conceded, its exercise by necessary implication absolved the lessor company from all liability during the term for injuries caused by the negligence of the lessee in operating it. Is such an implication necessarily involved in the grant of power to lease? Or must it appear that the State has in express terms released the lessor from the duties and obligations which devolved upon it in its very creation, and which constituted the consideration for clothing it with nominal corporate powers? Upon this question the authorities are conflicting, and, as it is presented for the first time here, it is our privilege and our duty to be governed, not by the number of cases cited on the one side or the other, but rather by the soundness of the reasoning upon which they rest. Beach Pri. Cor., sec. 366, says: "A railway company executing a lease to another company of the exclusive use of its track and rolling stock for 99 years, which is confirmed by the Legislature, will be liable for the destruction of property by fire, caused by the neglect on the part of the lessee company to keep its track clear of all inflammable matter, notwithstanding the Legislature may have conferred on such lessee corporation all of the powers of the lessor. There being no clause of exemption in such act of the Legislature, the liability of the lessor will remain . . . The original obligation to answer for negligence in the operation of the road can only be discharged by a legislative enactment, consenting to and authorizing the lease, with an exemption granted to the lessor company."
After conferring upon a corporation the right of eminent domain, with many other special privileges which the Legislature is (947) empowered to grant only in consideration of its duty and obligation to serve the people by affording them the means of safe as well as speedy transportation for themselves and their property, the State cannot be held to have abdicated its right to protect the patrons of the road who are under its care by the strained construction of a naked power to lease. Such a power does not carry with it the authority to the lessor to absolve itself and transfer its duties and obligations to another, whether able or unable to respond in damages for its wrongs *Page 559 
or defaults. Bank v. R. R., 25 S.C. 22; Harmon v. R. R., 28 S.C. 401;Nagler v. R. R., 83 Va. 707; Acker v. R. R., 84 Va. 648; Macon v. R. R.,49 Ga. 678; Balsey v. R. R., 119 Ill. 68; Singleton v. R. R., 21 Am. 
Eng. R. R., Cases, 226; 1 Spelling Pri. Corp., sec. 135. "The lessor company (says Spelling, supra) remains liable for the performance of public duties to private parties for the non-delivery of goods received by it for delivery, and for all acts done by the lessee in the operation of the road, notwithstanding the lease is authorized by the lessor's charter."
As we have intimated, the decisions of the courts of different states, and sometimes those of the same states, are conflicting, and we do not pretend to be governed by the greater number but the greater weight of the reasons given to sustain them. No matter how many leases and sub-leases may be made, the law attaches to the actual exercise of the privilege of carrying passengers and freight the compensatory obligation to the public to use ordinary care for the safety both of persons and property so transported. Spelling, supra, sec. 134. On the other hand the carrier, who simply substitutes, with the consent of the state, another in his place, cannot establish his own right of exemption from responsibility for the wrongs of the substitute unless he can show, not only explicit authority to lease the property, but to (948) rid itself of such responsibility. Singleton v. R. R., supra. Where the Legislature gives its express sanction to the release of the lessor company from liability, there can be no question that it is exempt.Broslen v. R. R., 145 Mass. 64.
Of the two or three reasons assigned for holding that the lessor company is liable for the torts of a lessee, where it has legislative authority to demise its road, but there is no express provision for its own exemption, we prefer to rest our ruling upon the ground that the original grant of extraordinary privileges still carries with it a correlative obligation to perform the duties, which were in contemplation of the State and the corporation when the charter was enacted. The Legislature is warranted in granting such exclusive privileges only in consideration of services to be rendered to the public. Constitution, Art. I, sec. 7. While the compensatory obligation to use ordinary care in providing for the safety of persons and property committed to its care, as a carrier, inheres in and attaches to the exercise of the corporate rights by the lessee, we think that without the express sanction of the Legislature the lessor is not relieved by any implication arising out of the general power to lease, but still remains subject to its original liability. R. R. v. Reylun,106 Ill. 534. When the State exercises its supreme and exclusive power, in delegating to a corporation the right upon the payment of just compensation to take it for public purpose, the company *Page 560 
holds its interest in the land solely for corporate purposes and subject to the right of the sovereign, if it fail to discharge its public functions, to institute proper proceedings and have it dissolved. In cases of dissolution, it seems that the property and franchise may be sold for the benefit of creditors and devoted to the same or (949) diverted to some other public purpose, and that there is a bare possibility of reverter. Gooch v. McGee, supra; Bass v. Nav. Co.,111 N.C. 446; VonGlahn v. DeRossett, 81 N.C. 467. Where the interest of the lessor company in the land condemned is limited to the right to use for corporate purposes and its franchise, which frequently expires in a term of years, is subject to forfeiture, in case of misuser or non-user of its powers, we fail to trace any such analogy between it and its lessee, as exists between a landlord, who is owner of the fee, and his lessee for years. Yet, upon this supposed analogy, many of the courts have held that the liability of the railway company that demises its road, like that of a landlord, extends no further than the obligation to use ordinary care in keeping the track, road-bed, right of way, station houses and other permanent structures in such condition that the safety of the public will not be imperiled by them, while the lessee is solely answerable for injuries caused by negligence in running trains, or the use of defective machinery.
A part of the original obligation of the lessor company to the public was to furnish such trains and other appliances as would be necessary to provide for the safety of the passengers as well as the employees, who should travel on its cars, and we see no reason why that duty should not exist, like that to look after the road-bed, still the Legislature, for the sovereign, declares the lessor absolved from it.
Resting our ruling upon the broader ground of the obligation to the public, which is inseparable from the grant and the exercise of the corporate privileges, except by the express consent of the Legislature, we see no force in the view of the subject which seeks to limit the scope of the lessor's duty, to such as pertain to land. Under the statute, which this Court in Gooch v. McGee, supra, says is in affirmance (950) of the common law principle, the land held for corporate purposes is an incident to the franchise and held only for the purpose of enjoying the privileges granted and performing the duties imposed. It seems but a narrow view of the subject to say that the duties attach to the limited interest in the land, and not to the franchise, to which the road-bed is a mere incident.
There are, however, still other courts in which it is held that while the liability of the lessor arises out of the original duty imposed by the charter, and that the power to lease raises no implication that it can rid itself of its responsibility for injury to others whether due to the *Page 561 
bad condition of the road-bed, right of way or other permanent structures, or to the careless running of trains or defective machinery, the lessees are nevertheless solely answerable for injuries to their own employees and servants. Looking to the fundamental principle upon which we rely to sustain our position, we see no sufficient reason for drawing any such line of distinction. While we know that there are courts which maintain, and others that deny, the correctness of this doctrine, yet if we apply the test, which we hold to be the true one, that the liability of the lessor grows out of the duty imposed with the privileges in the first instance, the same reason is found to exist for holding it liable to servants of the lessee for injuries sustained by them, as for those inflicted on passengers. Spelling, supra, sec. 135. A part of the original duty imposed by the charter was to compensate servants in damages for any injury they might sustain, except such as should be due to the negligence of their fellow-servants. The employee is deemed in law to contract ordinarily to incur such risks as arise from the carelessness of the other servants of the company, but where the lessor company would be liable, if it had remained in charge of the road, to a person acting as its own servant, we see no reason why it should not be answerable to him when employed (951) by the lessee. Its implied obligation in the first instance — to come back to the touchstone — was to compensate its own servants for injuries due to any cause other than the carelessness of their fellows, and the same rule must apply in its relation with the servants of the lessee. If the lessee would be liable, if sued jointly with the lessor company, then the demurrer cannot be sustained.
That brings us to the question whether the section "boss," Snell, who, as alleged in the complaint, "had full power and authority from the lessee company to hire and discharge hands, and whose orders and commands the plaintiff was bound to obey, is to be deemed a fellow, when by his failure to stop the hand-car in time, and by his carelessness in directing the manner of its removal from the track in front of an approaching train, he caused the plaintiff to be injured.
The demurrer admits the truth of the allegations of the complaint, and we think the facts bring this case within the principle announced in Pattonv. R. R., 96 N.C. 455. In that case the section master, who was empowered, just as in this, to command, discharge and employ laborers, ordered the laborer to jump from the moving train. The order to the plaintiff was to jump off the hand-car in a cut, assist in removing it from the track, and to attempt to hold it against the bank and out of the way of the passing train. Being unable to keep it out of the way of the train, the car was stricken and thrown violently against him, so that he sustained serious injury. Under the ruling in Patton's *Page 562 
(952) case, there would be no question about the liability of the lessee company, if it had been sued, and holding as we do that the lessor is liable to the same extent as the lessee company, we conclude that there was error in sustaining the demurrer.
Error.
Cited: Carr v. Coke, ante, 247; Cowan v. Fairbrother, 118 N.C. 414;Barcello v. Hobgood, ib., 730; Tillett v. R. R., ib., 1043; Styles v. R.R., ib., 1090; Turner v. Lumber Co., 119 N.C. 397; Williams v. R. R.,ib., 749; James v. R. R., 121 N.C. 528; Norton v. R. R., 122 N.C. 937;Johnson v. R. R., ib., 958; Benton v. R. R., ib., 1009; Pierce v. R. R.,124 N.C. 93; Ward v. Odell, 126 N.C. 954; Perry v. R. R., 128 N.C. 473;Raleigh v. R. R., 129 N.C. 266; Perry v. R. R., ib., 335; Harden v.R. R., ib., 357, 363, 366; Phelps v. Steamboat Co., 131 N.C. 13; Brown v.R. R., ib., 458, 459; Lamb v. Innman, 132 N.C. 980; Mabry v. R. R.,139 N.C. 389; Dunn v. R. R., 141 N.C. 523; Carleton v. R. R., 143 N.C. 47,49; Hill v. R. R., ib., 586, 597; Britt v. R. R., 144 N.C. 252; CoalCo. v. R. R., ib., 747; McCullock v. R. R., 149 N.C. 307; Parker v. R.R., 150 N.C. 434; Wright v. R. R., 151 N.C. 531; Zachary v. R. R.,156 N.C. 500; Lloyd v. R. R., 162 N.C. 496; Hyder v. R. R., 167 N.C. 587;Mitchell v. Lumber Co., 174 N.C. 121; Bryant v. Lumber Co., ib., 361;Dill v. R. R., 178 N.C. 610; Clement v. R. R., 179 N.C. 226, 230;Gilliam v. R. R., 179 N.C. 511; Vann v. R. R., 180 N.C. 660.