GILBERT LOGAN v. NORTH CAROLINA RAILROAD COMPANY.

*Action for Damages—Lease of Railroad — Liability of Lessor for Negligence of Lessee—Fellow Servants.*

1. Though railway companies fall within the classification of private corporations, they are quasi public and have no more authority to rid themselves of responsibility for the performance of the duties imposed upon them as inseparable from the privileges given them, than they have to sell any property which is necessary for corporate purposes.

2. A railroad company cannot escape its responsibility for negligence by leasing its road to another company unless its charter or a subsequent act of the Legislature specially exempts it from liability in such case.

3. Where a section boss has full power to hire, command and discharge those working under him, he is not a fellow servant.

4. In an action against one railroad company as lessor of another for injuries sustained by plaintiff, a section hand in the employ of the lessee, by reason of the negligence of the section boss of the latter, a complaint which alleges the fact of incorporation of both companies, the making of the lease, the fact and nature of plaintiff's employment, and that in removing a hand car from the track, in response to the orders of his boss, the giving of which at that time was negligence, he was struck and injured by a passing train, states a cause of action.

ACTION for damages against the North Carolina Railroad, as lessor of the Richmond & Danville Railroad,

heard on complaint and demurer before *Green, J.,* at February Term, 1895, of GUILFORD Superior Court.

The complaint was as follows:

"1. That the defendant, The North Carolina Railroad Company, is and was at and before the time hereinafter named a corporation duly chartered and organized under the laws of North Carolina and is now and has been continuously for more than twenty years past the sole owner of the railroad extending from Goldsboro in this State through Greensboro, Jamestown, High Point, to Charlotte in this State, including the railroad bed and track laid thereon, between the points aforesaid, with all the rights, franchises and privileges thereto belonging, with the rights to run freight and passenger cars thereon and with the power to rent and lease the same to other companies or corporations at its pleasure to be used for the purposes of railroading.

"2. That on or about the 12th day of September, 1871, and prior to the 8th day of October, 1893, the said North Carolina Railroad leased to the Richmond and Danville Railroad Company, a corporation duly chartered and organized under the laws of the State of Virginia, for the period of thirty years then next ensuing, its said railroad from Goldsboro to Charlotte, including said road bed and track to be used by the said Richmond and Danville Railroad Company for the purpose of transporting passengers and freight by means of its engines and cars upon and along the said railroad track from and between these points aforesaid ; and the said Richmond and Danville Railroad Company at the time of the injury to the plaihtiff hereinafter stated was in the possession of the said road under its said lease and running its freight and passenger trains thereon at its pleasure by permission of the said defendant, The North Carolina Railroad Company.

"3. That the plaintiff, at and before the injuries and wrongs hereinafter mentioned was employed by the said Richmond and Danville Railroad Company as a section hand on the section from Jamestown to Thomasville on the line of the said defendant's railway at and for a certain hire and reward agreed upon by the parties in that behalf. That the plaintiff was hired and employed by one Captain Walter Snell who was the agent and servant of the said Richmond and Danville Railroad Company, the said Snell being the section boss for said section with full power and authority of the Richmond and Danville Railroad Company to hire and discharge hands and servants on said section and who was the supervisor of the plaintiff in that behalf, and whose orders and commands in the lines of said service, as the agent, foreman and boss of the said Richmond and Danville Railroad Company, the said plaintiff was lawfully bound to obey.

"4. That on or about the 7th day of October, 1893, the said Snell, as such section boss, foreman and agent of the said Richmond and Danville Railroad Company, ordered and commanded the plaintiff and others of the section hands to accompany him on a hand car over a part of the said defendant's railway for the purpose of repairing the road-bed of the defendant at a point near Jamestown, being on the said Snell's section; and while passing over said road on the said hand-car as aforesaid the said Richmond and Danville Railroad Company, by its agent, servant and section boss, said Snell, not regarding its duty in that behalf and not exercising due care, carelessly and negligently required the plaintiff and other section hands upon said hand-car to propel the same into a cut on said defendant's road, with high embankments on either side, at about the time train hereinafter mentioned was due to pass that point, and that while passing through said cut as aforesaid

it was observed that a train of the Richmond and Danville Railroad Company was approaching from the direction in which they were going and within about three hundred feet from them, and thereupon the said Snell, section boss, ordered the hand-car to be stopped and ordered the plaintiff and other section hands to remove the said hand-car from the track over against the left embankment, and carelessly and negligently ordered plaintiff and other section hands to lift said car and hold it up while the said train was passing, which command they obeyed.

" That as soon as the said hand-car was stopped, the plaintiff and other section hands began to remove said car to the right side of the road-bed, there being more room on said side. Whereupon said Snell, section boss as aforesaid, carelessly and negligently commanded plaintiff and the other section hands to remove the same to the left side, as hereinbefore stated ; the plaintiff not having time to think, as the train was approaching so rapidly, believed the command of said section boss was a proper one and from a sense of duty obeyed it, and in obedience to the command held it up on the side of said embankment as directed and commanded by the said Snell, and that while holding the said hand-car as aforesaid the said train although in full view of the hand-car and plaintiff for a distance of several hundred feet and with sufficient time to have been stopped, negligently and carelessly and at full speed ran through said cut, struck the said hand-car with great force and violence and carried it upon and against the plaintiff whereby he was greatly hurt and injured in his body and limbs and was confined to his house and bed several months and has never been able since to labor or work and still suffers from the effects of the wounds, injuries and bruises received as aforesaid, and is permanently disabled to his damage to the amount of Five Thousand Dollars.

" Wherefore the plaintiff prays judgment in the sum of Five Thousand Dollars and for the costs of this action and for such other and further relief as the Court may deem proper."

The demurrer was as follows :

" The defendant above named demurs to the complaint of the plaintiff herein and says that the same doth not state facts sufficient to constitute a cause of action, for that :

" 1. It is alleged that the defendant corporation had legally leased all of its property, real and personal, rights and franchises to the Richmond and Danville Railroad Company and that the Richmond and Danville Railroad Company was in the legal possession of the same at the time of the injury complained of, and that the North Carolina Railroad Company was not in such possession.

" 2. For that the negligence for which the plaintiff brings his action is directly alleged to be the negligence of the servants and employees of the Richmond and Danville Railroad Company and not the North Carolina Railroad Company directly or indirectly.

" Therefore defendant asks that the action be dismissed and that it recover costs, &c."

The demurrer was sustained and the plaintiff appealed.

*Messrs. L. M. Scott* and *Shaw & Scales*, for plaintiff.
*Messrs. F. H. Busbee* and *Shepherd, Manning & Foushee*, for defendant.

AVERY, J.: It is settled law in this State that railway companies are private, as distinguished from public corporations. *Hughes* v. *Commissioners*, 107 N. C., 598 ; *Durham* v. *Railroad*, 108 N. C., 399. But when the power of eminent domain is delegated for the purpose of enabling these companies to discharge duties for the public benefit,

they occupy a different relation to the State and the people from that of ordinary private corporations, the powers of which are given and exercised exclusively for the profit or advantage of their stockholders, and are therefore called quasi-public, though they fall within the classification of private corporations. Hence, it has been declared that these companies have no more authority to sell, separate from the franchise, any real estate belonging to them and dedicated to strictly corporate purposes than a judgment creditor of a County has to subject the land on which the peblic buildings of the County are located. *Gooch* v. *McGee*, 83 N. C., 64; *Hughes* v. *Commissioners, supra*; *Cox* v. *Railroad*, 10 Ohio, 372; *Railroad* v. *Colwell*, 37 Pa., 337; *Foster* v. *Fowler*, 60 Pa., 27. Indeed, in *Gooch* v. *McGee, supra*, the clearest intimation is given, after approving the principle announced in the cases just cited, that, but for the fact that the statute had dispensed with the necessity for doing so, this Court would have overruled *State* v. *Rives*, 5 Ired., 227. There is a consensus of legal opinion every where that quasi-public corporations cannot sell themselves, and that their creditors cannot subject at execution sale, except as incident to the franchise, any property which is necessary for corporate purposes. If they cannot denude themselves of the means of discharging their duties to the public, can they by a lease of the franchise and appurtenant property rid themselves of responsibility for the performance of the duties which are imposed as inseparable from privileges granted them by the Legislature.?

The question of the authority of the lessor company to "farm out" its franchise and property to the lessee is no longer an open one. *State* v. *Railroad*, 72 N. C., 634. The plaintiff, after alleging that the North Carolina Railroad Company had leased its road to the Richmond & Dan-

116—60

ville Railroad Co., will not be heard to insist that we shall refuse to take notice of the adjudications of this Court in reference to the validity of the lease, unless the charters should be exhibited.

The defendant's counsel contend that the authority to lease being conceded, its exercise by necessary implication absolved the lessor company from all liability during the term for injuries caused by the negligence of the lessee in operating it.   Is such an implication necessarily involved in the grant of power to lease?   Or must it appear that the State has in express terms released the lessor from the duties and obligations which devolved upon it in its very creation, and which constituted the consideration for clothing it with nominal corporate powers?   Upon this question the authorities are conflicting, and, as it is presented for the first time here, it is our privilege and our duty to be governed, not by the number of cases cited on the one side or the other, but rather by the soundness of the reasoning upon which they rest.   Beach (in his work on Private Corporations, Sec. 366) says: "A railway company executing a lease to another company of the exclusive use of its track and rolling stock for 99 years, which is confirmed by the Legislature, will be liable for the destruction of property by fire, caused by the neglect on the part of the lessee company to keep its track clear of all inflammable matter, notwithstanding the Legislature may have conferred on such lessee corporation all of the powers of the lessor. There being *no clause of exemption* in such act of the Legislature; the liability of the lessor will remain........... The original obligation to answer for negligence in the operation of the road can only be discharged by a Legislative enactment, consenting to and authorizing the lease, *with an exemption granted to the lessor company.*"

After conferring upon a corporation the right of eminent

domain, with many other special privileges which the legislature is empowered te grant only in consideration of its duty and obligation to serve the people by affording them the means of safe as well as speedy transportation for themselves and their property, the State cannot be held to have abdicated its right to protect the patrons of the road who are under its care by the strained construction of a naked power to lease. Such a power does not carry with it the authority to the lessor to absolve itself and transfer its duties and obligations to another, whether able or unable to respond in damages for its wrongs or defaults. *Bank* v. *Railroad*, 25 S. C., 22 ; *Harmon* v. *Railroad*, 28 S. C., 401 ; *Nagler* v. *Railroad*, 83 Va., 707 ; *Acker* v. *Railroad*, 84 Va., 648 ; *Macon* v. *Railroad*, 49 Ga., 678 ; *Balsey* v. *Railroad*, 119 Ill., 68 ; *Singleton* v. *Railroad*, 21 Am. & Eng. R. R. Cases, 226 ; 1 Spelling on Private Corporations, Sec. 135. " The lessor company (says Spelling, *supra*) remains liable for the performance of public duties to private parties for the non-delivery of goods recived by it for delivery, and for all acts done by the lessee in the operation of the road, notwithstanding the lease is authorized by the lessor's charter."

As we have intimated, the decisions of the Courts of different States, and sometimes those of the same States, are conflicting, and we do not pretend to be governed by the greater number but the greater weight of the reasons given to sustain them. No matter how many leases and subleases may be made, the law attaches to the actual exercise of the privilege of carrying passengers and freight the compensatory obligation to the public to use ordinary care for the safety both of persons and property so transported. Spelling, *supra*, Sec. 134. On the other hand the carrier, who simply substitutes, with the consent of the State, another in his place, cannot establish his own right of

exemption from responsibility for the wrongs of the substitute unless he can show, not only explicit authority to lease the property, but to rid itself of such responsibility. *Singleton* v. *Railroad, supra.* Where the legislature gives its express sanction to the release of the lessor company from liability, there can be no question that it is exempt. *Broslen* v. *Railroad,* 145 Mass., 64.

Of the two or three reasons assigned for holding that the lessor company is liable for the torts of a lessee, where it has legislative authority to demise its road, but there is no express provision for its own exemption, we prefer to rest our ruling upon the ground that the original grant of extraordinary privileges still carries with it a correlative obligation to perform the duties, which were in contemplation of the State and the corporation when the charter was enacted. The legislature is warranted in granting such exclusive privileges only in consideration of services to be rendered to the public. Constitution, Art. 1, Sec. 7. While the compensatory obligation to use ordinary care in providing for the safety of persons and property committed to its care, as a carrier, inheres in and attaches to the exercise of the corporate rights by the lessee, we think that without the express sanction of the legislature the lessor is not relieved by any implication arising out of the general power to lease but still remains subject to its original liability. *Wabash R. Co.* v. *Reylun,* 106 Ill., 534. When the State exercises its supreme and exclusive power, in delegating to a corporation the right upon the payment of just compensation to take it for public purposes, the company holds its interest in the land solely for corporate purposes and subject to the right of the sovereign, if it fail to discharge its public functions, to institute proper proceedings and have it dissolved. In cases of dissolution, it seems that the property and franchise may be sold for the benefit of

creditors and devoted to the same or diverted to some other public purpose, and that there is a bare possibility of reverter. *Gooch* v. *McGee, supra*; *Bass* v. *Nav. Co.*, 111 N. C., 446; *VonGlahn* v. *DeRosset*, 81 N. C., 467. Where the interest of the lessor company in the land condemned is limited to the right to use for corporate purposes and its franchise, which frequently expires in a term of years, is subject to forfeiture, in case of misuser or non-user of its powers, we fail to trace any such analogy between it and its lessee, as exists between a landlord, who is owner of the fee, and his lessee for years. Yet, upon this supposed analogy, many of the courts have held that the liability of the railway company that demises its road, like that of a landlord, extends no further than the obligation to use ordinary care in keeping the track, road-bed, right of way, station houses and other permanent structures in such condition that the safety of the public will not be imperilled by them, while the lessee is solely answerable for injuries caused by negligence in running trains, or the use of defective machinery.

A part of the original obligation of the lessor company to the public was to furnish such trains and other appliances as would be necessary to provide for the safety of the passengers as well as the employees, who should travel on its cars, and we see no reason why that duty should not exist, like that to look after the road bed, till the Legislature, for the sovereign, declares the lessor absolved from it.

Resting our ruling upon the broader ground of the obligation to the public, which is inseparable from the grant and the exercise of the corporate privileges, except by the express consent of the Legislature, we see no force in the view of the subject, which seeks to limit the scope of the lessor's duty, to such as pertain to land. Under our statute,

which this Court in *Gooch* v. *McGee, supra,* say is in affirmance of the common law principle, the land held for corporate purposes is an incident to the franchise and held only for the purpose of enjoying the privileges granted and performing the duties imposed. It seems but a narrow view of the subject to say that the duties attach to the limited interest in the land, and not to the franchise, to which the road-bed is a mere incident.

There are, however, still other Courts in which it is held that while the liability of the lessor arises out of the original duty imposed by the charter, and that the power to lease raises no implication that it can rid itself of its responsibility for injury to others whether due to the bad condition of the road-bed, right of way or other permanent structures, or to the careless running of trains or defective machinery, the lessees are nevertheless solely answerable for injuries to their own employees and servants. Looking to the fundamental principle upon which we rely to sustain our position, we see no sufficient reason for drawing any such line of distinction. While we know that there are Courts which maintain, and others that deny the correctness of this doctrine, yet if we apply the test, which we hold to be the true one, that the liability of the lessor grows out of the duty imposed with the privileges in the first instance, the same reason is found to exist for holding it liable to servants of the lessee for injuries sustained by them, as for those inflicted on passengers. Spelling, *supra,* Sec. 135. A part of the original duty imposed by the charter was to compensate servants in damages for any injury they might sustain, except such as should be due to the negligence of their fellow servants. The employee is deemed in law to contract ordinarily to incur such risks as arise from the carelessness of the other servants of the company, but where the lessor company would be liable, if it had remained in charge

of the road, to a person acting as its own servant we see no reason why it should not be answerable to him when employed by the lessee. Its implied obligation in the first instance—to come back to the touch-stone—was to compensate its own servants for injuries due to any cause other than the carelessness of their fellows, and the same rule must apply in its relation with the servants of the lessee. If the lessee would be liable, if sued jointly with the lessor company, then the demurrer cannot be sustained.

That brings us to the question whether the section " boss," Snell, who, as alleged in the complaint, " had full power and authority from the lessee company to hire and discharge hands, and whose orders and commands the plaintiff was bound to obey, is to be deemed a fellow, when by his failure to stop the hand-car in time, and by his carelessness in directing the manner of its removal from the track in front of an approaching train, he caused the plaintiff to be injured.

The demurrer admits the truth of the allegations of the complaint, and we think the facts bring this case within the principle announced in *Patton* v. *Railroad*, 96 N. C., 455. In that case the section master, who was empowered, just as in this, to command, discharge and employ laborers, ordered the laborer to jump from the moving train. The order to the plaintiff was to jump off the hand-car in a cut, assist in removing it from the track, and to attempt to hold it against the bank and out of the way of the passing train. Being unable to keep it out of the way of the train, the car was stricken and thrown violently against him, so that he sustained serious injury. Under the ruling in Patton's case, there would be no question about the liability of the lessee company, if it had been sued, and holding as we do that the lessor is liable to the same extent as the lessee

company, we conclude that there was error in sustaining the demurrer.

Error.