On 2 August, 1928, the Treasurer of North Carolina instituted an action in the Superior Court of Wake County against Mecklenburg County and the Mecklenburg Highway Commission. It was alleged in the complaint that the defendant, Mecklenburg County, was a body politic and corporate, and authorized to sue and be sued. It was further alleged that "the General Assembly of North Carolina enacted chapter 93, Public Laws of 1927, wherein there was levied and imposed a tax of four cents per gallon on all motor fuel, sold, distributed or used in this State; that all of the net proceeds of said tax is required to be paid into the State Treasury and there placed to the credit of the State Highway Fund, to be used for the purposes hereinbefore stated." It was further alleged that the county of Mecklenburg had received and used in the State of North Carolina from 13 April, 1927, to 27 June, 1928, 184,485 gallons of gasoline, and that said gasoline was subject to a tax of four cents per gallon, amounting to $7,379.40.
The cause of action is confined exclusively to the liability of Mecklenburg County for said tax.
The county filed an answer admitting that it had bought the amount of gasoline alleged in the complaint, outside of the State of North Carolina, and that said defendant "used said gasoline in the State of North Carolina solely and exclusively for the operation of automobiles, trucks, tractors, road building machinery and other machinery and appliances, in the performance of the duties vested in it, and required of it by law, in the construction and maintenance of the public highways of Mecklenburg County, and the defendant avers that in carrying out such duties it was performing a governmental function and was an instrumentality of the State."
Upon the hearing the following judgment was rendered:
"The defendant has received and used in the county of Mecklenburg since 3 April, 1927, up to 27 June, 1928, 184,485 gallons of gasoline, which was used by it in the building of roads in said county and in the management, operation and maintenance of the roads, camps or convict camps of said county. Said gasoline was purchased outside of the State and shipped into the State through interstate commerce, without the payment of the tax of 4 cents per gallon, as provided by the laws of 1927, in cases of `distributors' as defined in said act.
The tax or excise on said gasoline, if due at all, amounts to $7,379.40; and that amount is due to the State through its Treasurer, by the defendant, *Page 359 
if the defendant is liable at all for said tax, under the provisions of chapter 93, Public Laws of 1927.
The defendant contends that it is not liable for said tax or duty, by whatever name it may be called, for that:
(a) It is a political subdivision of the State, engaged in governmental duties and cannot be taxed, or required to pay any duty on gasoline under the provisions of said act, because the imposition of such tax or duty would be in contravention of Article V, section 5, of the Constitution of North Carolina.
(b) The defendant does not fall within the meaning of the word "distributor" as defined in said act of 1927.
These are the questions presented, and upon the decision of the Court, as to these two questions, it is admitted that the rights of the parties depend.
The Court has already held that the defendant is a political subdivision of the State, engaged in governmental functions. Jenkins v. Griffith,189 N.C. 633, 127 S.E. 625. This being true in fact, the Court is of the opinion that the imposition of the tax of four cents per gallon upon gasoline purchased and used by the defendant is in contravention of the Constitution, Art. V, sec. 5.
The act of 1927, chapter 93, Public Laws, states that the word distributor shall include any person, firm, association or corporation that has on hand or in its possession, in this State, motor fuels being held for the purpose of sale, distribution or use, within the State. Section 3 of said act further limits and defines the meaning of the word distributor, and, as the entire statute should be considered in construing section 1(Jones v. Board of Education, 185 N.C. 303), the Court is of the opinion that the word distributor as used in section 1, means only those who are engaged in the business of buying and selling motor fuels, and that it does not apply to the defendant in this case.
Wherefore, it is now considered by the Court, ordered, adjudged and decreed, that the plaintiff is not entitled to recover anything in this action; that the defendant go hence without day and recover its costs, to be taxed by the clerk."
From the foregoing judgment the plaintiff appealed.
The record presents two questions of law, to wit:
(1) Is a county liable for a tax upon gasoline, used by it in the discharge of its governmental functions? *Page 360 
(2) Is a county using gasoline in the discharge of its governmental functions within the purview of chapter 93, public Laws of 1927?
The defendant contends that it is not liable for said tax by reason of the application of Article V, section 5, of the Constitution of North Carolina, the pertinent portion of which is that "property belonging to the State, or to municipal corporations, shall be exempt from taxation," etc. A county under our system of government is not strictly a municipal corporation. This concept runs through the law, beginning with Mills v.Williams, 33 N.C. 558. The distinction between public and private corporations was thus expressed in that case: "The substantial distinction is this: some corporations are created by the mere will of the Legislature, there being no other party interested or concerned. To this body a portion of the power of the Legislature is delegated to be exercised for the public good, and subject at all times to be modified, changed, or annulled. Other corporations are the result of contract. The Legislature is not the only party interested; for, although it has a public purpose to be accomplished, it chooses to do it by the instrumentality of a second party. These two parties made a contract."
Again in Bell v. Commissioners, 127 N.C. 85, 37 S.E. 136, this Court declared: "Counties are not, in a strictly legal sense, municipal corporations, like cities and towns. They are rather instrumentalities of government, and are given corporate powers to execute their purposes, and they are not liable for damages, in the absence of statutory provisions giving a right of action." To the same effect is the utterance in Jones v.Commissioners, 137 N.C. 579, 50 S.E. 291, in these words: "These counties are not, strictly speaking, municipal corporations at all in the ordinary acceptation of the term. They have many of the features of such corporations, but they are usually termed quasi-public corporations. In the exercise of ordinary governmental functions, they are simply agencies of the State, constituted for the convenience of local administration in certain portions of the State's territory, and in the exercise of such functions they are subject to almost unlimited legislative control, except where this power is restricted by constitutional provision." The weight of authority is to the effect that all the powers and functions of a county bear reference to the general policy of the State, and are in fact an integral portion of the general administration of State policy. White v.Commissioners, 90 N.C. 437; Hughes v. Commissioners, 107 N.C. 598,12 S.E. 465; Pritchard v. Commissioners, 126 N.C. 908, 36 S.E. 353;Burgin v. Smith, 151 N.C. 561, 66 S.E. 607; Marsh v. Early, 169 N.C. 465,86 S.E. 303.
Therefore, property held by a county is held for the express purpose of aiding or facilitating the discharge of governmental functions. For *Page 361 
this reason the property of the State and the property of the counties is exempt from taxation by express provisions of the Constitution in Article V, section 5 thereof.
Another reason for exempting the property of the State and counties from taxation is thus stated by Cooley on Taxation, Vol. II, 4 ed., paragraph 621: "Some things are always presumptively exempted from the operation of general tax laws because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for public purposes. All such property is taxable, if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the Legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the State and by all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the Constitution or a statute."
It is clear, from all the authorities upon the subject, that the State cannot levy a tax upon gasoline owned by a county, but the plaintiff insists that the said tax on the use of gasoline by a county is not a tax on property but an excise tax. This position is sound and is supported by uniform judicial declaration upon the subject. Askren v. Continental OilCo., 252 U.S. 444; Bowman v. Continental Oil Co., 256 U.S. 642; TexasCo. v. Brown, 258 U.S. 466; Chicago Motor Club v. Kinney, 160 N.E. 163;City of Portland v. Kozer, 217 P. 833; Crockett v. Salt Lake County,270 P. 142, 60 A.L.R., 867.
"Taxes are charges imposed by the General Assembly, or under its authority for public purposes, and upon grounds of public policy."Commissioners v. Hall, 177 N.C. 490, 99 S.E. 372. Excise taxes are defined by Cooley, Vol. I, 4 ed., sec. 42, as "taxes laid upon the manufacture, sale or consumption of commodities within the county, upon licenses to pursue certain occupations and upon corporate privileges." An excise tax is therefore a charge imposed by law, and in the case at bar, it is a charge upon the use of property devoted wholly to the discharge of governmental functions. Gasoline is essential to the governmental function of road building. Therefore, to levy a tax upon the use of one of the means by which governmental function is discharged is to lay a burden upon governmental function itself. This idea was expressed *Page 362 
by the Supreme Court of the United States in Helson v. Kentucky, decided 18 April, 1929, and reported in 73 L.Ed., 683. In that case the State of Kentucky levied a tax upon the use of gasoline which was essential to the operation of a ferry boat engaged in interstate commerce. The Court said: "A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce." Panhandle Oil Co.v. Mississippi, 277 U.S. 218, 56 A.L.R., 585. The defendant county cannot dispose of gasoline except to use it for governmental purposes. Hence in the hands of the county the use of gasoline constitutes its sole property value. Moreover, is it to be presumed, in the absence of express statutory declaration to that effect, that the General Assembly intended to levy a charge or excise tax upon the performance of governmental function? The State Capitol in Raleigh is owned by the State. The physical property is therefore exempt from taxation by virtue of the constitutional exemption. Could the Legislature levy a privilege tax or excise tax of $10,000, or other sum, a year upon the use of the capitol by the Legislature and the Governor and other State officers in discharging their constitutional and governmental duties? As to whether the Legislature has such power, we do not decide, but certainly such power would not be presumed, or such a result anticipated, in the absence of express statutory declaration. This conclusion is justified by the utterance of the Court inGuilford County v. Georgia Co., 112 N.C. 34, 17 S.E. 10, as follows: "General statutes do not bind the sovereign, unless specially mentioned in them. . . . The county is a part of the delegated authority of the State, and is pro hac vice the State."
Without deciding the constitutional question involved, we are of the opinion that the defendant does not come within the purview of chapter 93, Public Laws of 1927. In that statute a tax of four cents per gallon was laid upon a "distributor." Section 1 of the act defines a distributor as "any person, firm, farm, association, or corporation that has on hand or in his or its possession in this State, motor fuel being held for the purpose of sale, distribution or use within the State," etc.
The contention of the plaintiff is that the county of Mecklenburg is such a corporation as to bring it within the definition of "distributor," and that it is admitted that such corporation had the gasoline specified in the complaint in its possession for "use within the State." The question then, is whether a county is a "distributor" when it uses gasoline in the discharge of its governmental function. That is to say, when the General Assembly used the word "corporation" in said act, did it have in mind the ordinary business corporation, or did it also have in mind governmental agencies? The chief method of probing legislative intent is to examine the language which is supposed to express that intent. In *Page 363 
section 3 of the act it is declared that "any distributor engaged in business . . . and another distributor, prior to the commencement of doing business" shall "file an application for a license setting forth the name under which such distributor transacts or intends to transact business within the State, the address of each place of business and a designation of the principal place of business." Such distributor shall also file a bond in an amount not exceeding $10,000 with such surety as may be required. Such distributor shall also keep a record of all fuels purchased, received, sold, delivered or used by him. If any distributor makes a false or fraudulent report, he shall be guilty of a misdemeanor and fined not less than $100 nor more than $1,000. Furthermore, if the tax is not paid, the State Treasurer can secure a judgment for the amount and the Treasurer shall have "all remedies now, or which may hereafter be given by the laws of the State of North Carolina for the collection of taxes, . . . for the collection of judgment recovered by the State Treasurer under this section." In other words, if a county shall be deemed to be distributor, it must make an application, give a bond and procure a surety. If any false statement should be made the county could thereupon be arrested and fined not less than $100 nor more than $1,000. Thereafter, the State Treasurer would take judgment, and if the county did not pay, he could levy an execution upon the county's property and sell it at the courthouse door. The property of a county cannot thus be subjected to debt. Hughes v.Commissioners, 107 N.C. 598, 12 S.E. 465; Gooch v. Gregory, 65 N.C. 142;Hardware Co. v. Schools, 151 N.C. 507, 66 S.E. 583.
Furthermore, general statutes do not bind the sovereign unless the sovereign is expressly mentioned. Thus in S. v. Garland, 29 N.C. 48,Ruffin, C. J., wrote: "It is a known and firmly established maxim that general statutes do not bind the sovereign, unless expressly mentioned in them. Laws are made prima facie for the government of the citizens, and not of the State itself."
These considerations lead unerringly to the conclusion that the General Assembly did not intend to include governmental agencies within the term "distributor."
Our attention has been called to only one case in the country deciding the identical question involved in this litigation. That case is Crockettv. Salt Lake County, 270 P. 142, 60 A.L.R., 867. The Supreme Court of Utah decided that a county was liable for the tax under a statute somewhat similar to our statute. The Court was sharply divided and the dissenting opinions are strong and persuasive. The Portland case, supra, is also in point, but that case involved the rights of a city.
Affirmed. *Page 364