Petition of Johnstown, Indiana & Westmoreland Turn-
pike Company for the filing and approval of Bond.
Appeal of P. McManus.

*Appeals—Practice, C. P.—Interlocutory order in road cases.*

An appeal from two orders of the court below; the first, approving the
bond of a turnpike company given for injuries that may be sustained by
the appellant in consequence of the taking of his land by the turnpike com-
pany, the second, appointing viewers to assess such damages, is prema-
turely taken and will be quashed. The statute does not contemplate a
separate appeal from each interlocutory order.

*Eminent domain—Turnpike companies—Act of 1874.*

Turnpike companies, incorporated under the act of 1874, have the right
or power to enter upon private land for the purpose of constructing their·
roadway upon giving security as provided by the 41st section of the said
Act of April 29, 1874, P. L. 73.

*Words and phrases—Turnpike road defined.*

A turnpike road is a public highway; every traveler has the right to
use it upon paying toll; it cannot be closed against public use; its ob-
struction is a public nuisance for which indictment will lie.

Argued April 21, 1897. ·Appeal, No. 152, April T., 1897, by
P. McManus, from order of C. P. Westmoreland Co., Feb. T.,
1897, No. 832, approving bond and appointing viewers.  Before
RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY
and SMITH, JJ.  Appeal quashed.

Petition of defendant, with bond of defendant company, for
appointment of viewers for taking of land for the purpose of
constructing a turnpike and convenient appurtenances thereto.
Before DOTY, P. J.

On January 30, 1897, the court directed a bond to be filed
and approved and appointed five viewers and fixed the time of
meeting, whereupon P. McManus, owner of the land which
was to be appropriated, excepted to the order of the court ap-
proving the bond in the above case; and also excepted to the
order of the court appointing viewers to assess the damages
and entered an appeal from the orders of the court to the Supe-
rior Court.

**66**     McMANUS'S APPEAL.

Assignment of Errors—Opinion of the Court. [5 Pa. Superior Ct.

*Errors assigned* were (1, 2) approving the bond and appointing the viewers.

*Jno. E. Kunkle*, with him *Edward E. Robbins*, for appellant. —Under the rule of court and the law it was incumbent upon the petitioner to set forth all the facts necessary to give the court jurisdiction: Heise v. Railroad Co., 62 Pa. 67; Railroad Co.'s Application, 7 Phila. 461.

The petition is defective in setting out the requirements of the statute under which it is taken as they must be complied with: Darlington v. U. S., 82 Pa. 382.

The Act of April 29, 1874, P. L. 73, does not give the turnpike company the powers of eminent domain. All powers not given in direct and unmistakable manner are withheld: Com. v. Railroad, 27 Pa. 339.

It has been held that the failure to grant is itself an exclusion. Omission is prohibition: Groff's Appeal, 128 Pa. 621.

It has been repeatedly held by the Supreme Court that street railways incorporated under the act of 1889 do not have the power of eminent domain, although they are empowered to construct street railways on certain routes, yet still they are bound to obtain the consent of the owners of the lands: Penna. R. Co. v. Montgomery Passenger Ry., 167 Pa. 62; Heilman v. Lebanon Street Ry., 175 Pa. 188.

The particular point in controversy has not been decided in reference to turnpike companies, but the same principles apply, and we ask the court to invoke them in our favor.

*W. Horace Rose* and *Frank P. Martin*, with them *Oliver R. Snyder*, for appellee.—The appellant admits that the Act of January 26, 1849, P. L. 10, gave the right of eminent domain to turnpike companies. The contention is absurd that the act of 1874 authorizing the chartering of road companies, was intentionally adopted so as to confer the right of eminent domain upon the corporation " to enter upon lands contiguous and near to the road," and purposely withhold it in the matter of the construction of the road itself.

OPINION BY RICE, P. J., July 23, 1897:

A proper determination of the power of a turnpike company

incorporated under the Act of April 29, 1874, P. L. 73 to appropriate land for its roadway will be aided by a consideration of what a turnpike is in legal sense. Nothing is better settled than that a turnpike road is a public highway, and every traveler has the same right to use it upon paying the toll established by law as he would have to use any other public highway. It cannot be closed by the company against public use, and if for any cause the franchises of the company are forfeited its road does not cease to be a public highway, but thenceforth is to be maintained in good order by the municipality within which it is located: Pittsburg, etc., R. R. Co. v. Com., 104 Pa. 583.

The obstruction of a turnpike is a public nuisance, for which indictment will lie: Northern Central Ry. Co. v. Com., 90 Pa. 300. In Lancaster Turnpike Co. v. Rogers, 2 Pa. 114 it was said that when the company ceased to use a building erected in part on the turnpike as a toll house, it ceased to be there for a lawful purpose, and became a public nuisance. The chief, if not the only, difference between a turnpike and a common highway is that instead of being made at the public expense in the first instance, it is authorized and laid out by public authority, and made at the expense of individuals in the first instance and the cost of construction and maintenance is reimbursed by a toll levied by public authority for the purpose: Commonwealth v. Wilkinson, 33 Mass. 175; N. C. Ry. Co. v. Commonwealth, supra. "It is the theory of the authorities that tolls are allowed the turnpike company to reimburse it for constructing and keeping the road in repair for safe and convenient use and that tolls are the equivalent of taxes:" Elliott on Roads, 53 and cases there cited. This is only another method of taxing the public for these purposes: Geiger v. P. & R. Turnpike Road Co., 167 Pa. 582.

In the case of McClenachan v. Curwen, 6 Binn. 509, decided in 1802, it was held that the commonwealth had a constitutional right to authorize a turnpike company to lay out a road through the private ground of the citizens without making compensation for the soil, this upon the theory that such compensation was originally made in the six per cent allowance for roads in each purchaser's particular grant. See also Plank Road Co. v. Thomas, 20 Pa. 91. This has been remedied by later constitutional provisions and legislation, but the fact that the landowner

now receives compensation for the taking of his soil does not distinguish a turnpike from a city or borough street. One is laid out, constructed and maintained by the municipality under a power delegated to it by the commonwealth, the other through the agency of a corporation chartered for the purpose, but both are for public use, and private property cannot be taken for one more than the other without just compensation to the owner. In the one case the power to designate the termini and the route are vested in the municipality. In the other case the selection of the route is left to the discretion of the directors of the company, but the termini are designated by the state; for it is to be remembered that a charter taken out under the act of 1874 has the same effect in conferring privileges and enjoining duties and is to be construed according to the same rules of law and equity as if it had been granted directly by the legislature; Act of April 29, 1874, sec. 25, P. L. 73; Cochran v. Arnold, 58 Pa. 399.

Furthermore, the statute prescribes the manner in which the road shall be constructed; provides for the appointment of viewers by the court to ascertain whether it has been done in a " competent and workmanlike manner according to the true intent and meaning of the act," before the company shall be licensed to erect gates and collect tolls; authorizes proceedings for throwing open the gates if the road is not kept in proper repair; fixes the rate of tolls; and reserves to the legislature the power to alter the same. All this is utterly inconsistent with the idea that the right of way acquired by the company is its mere private property. This being the nature of a turnpike it would seem that a statute authorizing a company incorporated in accordance with its provisions to construct and maintain a public highway of this nature between the points designated in its charter would by necessary implication give the right to take land for the purpose, especially when it provides as carefully as does the act of 1874 for securing compensation to the owner of the land so taken.

But the right does not arise by implication alone. Section 30 of the act of 1874 authorizes the directors of such corporation " to appoint, agree and contract with such engineers, superintendents . . . . as they may think necessary to construct such road," (clause 1) and " with their superintendents, engineers,

. . . . to enter in and upon the lands contiguous and near to which the said road shall be made or constructed, first giving bond and proceeding as required by the forty-first section of this act." (Clause 2.) This necessarily implies, if the language does not literally give, the right to enter upon land for the purpose of constructing the roadway itself. It would be passing strange that the legislature should give the right to enter upon contiguous land for purposes incident to the construction and maintenance of the roadway and withhold the right to enter upon land for the main purpose for which the company is incorporated, namely the opening of a public highway between the two points designated in the charter. The unreasonableness of such interpretation of the law is still more apparent when it is remembered that a turnpike company incorporated by a charter which specifies the termini of its roadway but is silent as to the intermediate route cannot ordinarily appropriate an existing public highway: Groff's Appeal, 128 Pa. 621, affirmed on reargument in Groff v. Turnpike Co., 144 Pa. 150.

"The general rule," says Mr. Justice READ, "undoubtedly is, that charters of incorporation of private companies are to be construed strictly in favor of the commonwealth—so are grants to any persons, but they are to be construed reasonably. It is very clear that when the purpose of the franchise is the performance of a public act the grant is to be interpreted so as to enable the act to be done:" Monongahela Bridge Co. v. Kirk, 46 Pa. 112. But the right claimed does not depend alone on a construction of the last quoted provision of the act of 1874. The sixth section of the general law regulating turnpike and plank road companies, approved January 26, 1849, P. L. 10, clearly gave the right to take the land of private individuals for the roadway: Plank Road v. Thomas, 20 Pa. 91. And while this section was not reënacted in hæc verba in the act of 1874, as was the portion of the ninth section relative to entering upon contiguous lands, this does not furnish conclusive proof that the legislature intended to abrogate the right which it gave. As we have seen, it is a right without which the execution of the purpose for which the company is incorporated would generally be impracticable if not physically impossible; this is a public purpose; adequate provision is made for securing compensation for the land taken; and the act of 1874 expressly

provides that road companies incorporated in accordance with its provisions "shall be entitled to the benefits of all the general laws of the commonwealth regulating turnpike and plank road companies." This latter declaration furnishes very strong evidence of an intention not to withhold from turnpike companies to be incorporated in the future a power conferred by a prior general law and one so essential to the execution of the purpose of their creation. Constitutional objections might possibly be urged against its operation as an extension of the provisions of the sixth section of the act of 1849 to a new class of subjects, but it is legitimate and strongly persuasive evidence of an intention not to repeal them. And if they are not repealed then they apply without express reënactment. For these reasons we conclude, without hesitation, that turnpike companies incorporated under the act of 1874 have the right or power to enter upon private land for the purpose of constructing their roadways upon giving security as provided in the 41st section.

We have thus passed upon the only question raised or argued by counsel, but there is a question of practice which we do not feel at liberty to ignore.

This is an appeal from two orders of the court below; the first approving a bond of the defendant company given for injuries that may be sustained by the appellant in consequence of the taking of his land by the turnpike company in the exercise of its asserted right of eminent domain; the second appointing viewers to assess such damages. The appeal was taken after the time appointed for the meeting of the viewers but before they made their report. The approval of the bond and the appointment of viewers were but successive steps in condemnation proceedings which are not yet ended. When they reach final judgment an appeal will lie in which the legality and regularity of the proceedings from the beginning may be reviewed, but the statute does not contemplate a separate appeal from each interlocutory order, as these undoubtedly are. The case might be different if the approval of the bond was an adjudication of the company's right under its charter to take land for its road; but it is not. If the company had the right the bond was an essential prerequisite to the exercise of it, but if it has not such right under its charter the approval of the bond against the appellant's objection did not give it and was

not an adjudication which concludes him. It settled nothing as to the right: Getz v. R. R. Co., 1 Walk. 427; Slocum's Appeal, 12 W. N. C. 84. See also Getz's Appeal, 10 W. N. C. 453; Twelfth St. Market Co. v. R. R. Co., 142 Pa. 580. It follows that the appeal was prematurely taken: Horner & Roberts' R. R., 37 Pa. 333; Hall's Appeal, 56 Pa. 238; Macrum v. Jones, 10 Cent. Rep. 280 ; In re Turnpike Co., 21 W. N. C. 346.

The appeal is quashed, the appellant to pay the costs.