575 A.2d 640

**VACATION CHARTERS, LTD., Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1990.

Decided May 16, 1990.

Petition for Allowance of Appeal
Granted Jan. 17, 1991.

James A. Swetz, Cramer, Swetz & McManus, Strouds-burg, for petitioner.

Terrence J. Buda, Asst. Counsel, with him, Frank B. Wilmarth, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

Vacation Charters, Ltd., (Vacation Charters) petitions for review of an Order of the Pennsylvania Public Utility Commission (Commission) denying Vacation Charters exceptions to Administrative Law Judge Richard Lovenwirth's (ALJ) decision granting Summary Judgment in favor of the Commission; and adopting, with modification, the ALJ's Initial Decision.

On August 19, 1988, the Commission filed an Order to Show Cause against Vacation Charters and W. Jack Kalins, individually and as president of Vacation Charters, alleging Vacation Charters was providing public utility turnpike service without a certificate of public convenience in violation of Section 1101 of the Public Utility Code (Code), 66 Pa.C.S. § 1101. On September 1, 1988, Vacation Charters and W. Jack Kalins filed an Answer which admitted certain factual allegations but denied others, including the legal conclusions in the Order to Show Cause.[1]

The facts in the case are not in dispute. Moseywood Road is a two-mile long road in Kidder Township, Carbon County, Pennsylvania, which is owned and operated by Vacation Charters. It has toll booths at each end which are manned 24 hours a day, and which charge a fare of 25 cents to each individual car and 50 cents for each trailer or truck, which utilize the road. Finally, many of the residents in the area purchase yearly passes for $50 and that approximately 460 property owners living between the toll booths in the resort community of Split Rock pay a charge of $150 to $175 a year for "road maintenance." (R.R. 022 to 032).

It was stipulated that Moseywood Road is open to members of the public desiring access to the Split Rock Resort or homes located within the resort area, with booths located at each end of the road for collection of entry fees and that individuals reaching the toll booths are not questioned with respect to destination before paying an entry fee. (R.R. 050).

1. On January 18, 1989, the Order to Show Cause against W. Jack Kalins, individually, was dismissed with all further proceedings involving only Vacation Charters.

On January 26, 1989, the Commission's Law Bureau filed a Motion For Summary Judgment (R.R. 051–055). Vacation Charters filed an Answer and a Cross–Motion For Summary Judgment. On May 19, 1989, the ALJ issued his Initial Decision which granted the Commission's Motion For Summary Judgment. The ALJ also sustained the Order to Show Cause against Vacation Charters, and ordered Vacation Charters to file, pursuant to Section 1102 of the Code, 66 Pa.C.S. § 1102, an application for a certificate of public convenience to provide turnpike public utility service. Vacation Charter filed Exceptions to the ALJ's Initial Decision. On July 17, 1989, the Commission entered an Opinion and Order denying the Exceptions and adopting with modification, the ALJ's Initial Decision.

■ Our scope of review in Public Utility Commission cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are, or are not, supported by substantial evidence. *Barasch v. Pennsylvania Public Utility Commission,* 507 Pa. 561, 493 A.2d 653 (1985).

Vacation Charters contends that it is not a public utility as defined under Section 102 of the Code, 66 Pa.C.S. § 102, because it maintains a private access road and not a "turnpike" open to the public at large, and therefore should not be subject to regulation by the Commission.

A "public utility" is defined under Section 102 of the Code as:

(1) Any person or corporations now or hereafter owning or operating the Commonwealth equipment or facilities for:

\* \* \* \* \* \*

(iv) Use as a canal, *turnpike,* tunnel, bridge, wharf, *and the like for the public for compensation.* (Emphasis added.)

66 Pa.C.S. § 102.

Although the Code does not provide a definition of "turnpike", the courts have defined it as a "public highway" for

public purposes for which a toll is charged.[2] *McManus's Appeal,* 5 Pa.Super. 65 (1897); *Dalton Street Railway Co. v. Commonwealth,* 53 Pa.D & C 650, 46 Lack.Jur. 209 (1945). In *McManus's Appeal,* the Superior Court stated "a turnpike road is a public highway, and every traveler has the same right to use it upon paying the toll established by law as he would have to use another public highway." *McManus's Appeal,* 5 Pa.Super. at 67.

Vacation Charters admits that Moseywood Road is open to members of the public desiring access to the resort area, and that individuals are not questioned with respect to their destination before paying the fee. (R.R. 050). However, Vacation Charters contends that the public cannot use the road as a matter of right because it is posted as a "private access road" and tri-axle vehicles are prohibited.[3]

Although Moseywood Road is posted as a private access road, it is clear from the record that the road is open to all members of the public who may use it. Moseywood Road is used by many members of the public to reach State Routes 940 and 903, ski facilities and other businesses not within the Resort area between the tolls. (R.R. 053–055; 069–071). Individuals using the road are not questioned as to their destination when paying the toll. (R.50). Thus, any member of the public can travel the road without any restrictions.

Furthermore, Moseywood Road continues at either end as a state and a township route which are both public highways and is often used as a connector between the two. (R.R. 055). Thus, the public use of Moseywood Road is of the same character as that which exists on the state and

**2.** The Code does define highway in Section 102 as "[a] way or place of whatever nature open to the use of the *public as a matter of right* for the purposes of vehicular travel." (Emphasis added.) 66 Pa.C.S. § 102.

**3.** Vacation Charters also points out that the public agencies having jurisdiction to accept the road for dedication to public use, have refused to assume jurisdiction to do so. It is irrelevant in this context that the public agencies turned down Vacation Charters proposed dedication for public use since those entities are under no compulsion to assume jurisdiction over any road.

township portions of the same road which are connected to it, except as to the toll. *See New Street Bridge Co. v. Pennsylvania Utility Commission*, 76 Pa.Super. 6 (1921), *reversed on other grounds*, 271 Pa. 19, 114 A. 378 (1922).

■ Likewise, the fact that tri-axle vehicles are prohibited is of no consequence since the word "public" in the phrase "open to the public" in the definition of highway under Section 102 of the Code, 66 Pa.C.S. § 102, refers to persons who can use the highway not to the means by which those persons get about. *Conrail v. Pennsylvania Public Utility Commission*, 76 Pa.Commonwealth Ct. 25, 463 A.2d 90 (1983). Public highways are also similarly posted to prohibit certain classes and weights of vehicles.

Since we agree with the Commission that Vacation Charters is operating a turnpike in violation of Section 1101 of the Code, 66 Pa.C.S. § 1101, it must obtain a certificate of public convenience pursuant to Section 1102 of the Code, 66 Pa.C.S. § 1102, as required by the Commission's Order.

Therefore, we find no error of law or unsubstantiated findings of fact made by the Commission in this matter. Accordingly, the order of the Commission is affirmed.

## ORDER

AND NOW, this 16th day of May, 1990, the order of the Pennsylvania Public Utility Commission dated July 17, 1989, is hereby affirmed.