605 A.2d 314

**VACATION CHARTERS, LTD., Appellant,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1992.

Decided March 23, 1992.

James A. Swetz, Stroudsburg, for appellant.

Terrence J. Buda, Asst. Counsel, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue raised by this appeal is whether a private landowner who charges a fee for entrance onto its property by means of a toll road which is posted as a private access road, is a public utility under the Public Utility Code,[1] and is required to file a certificate of public convenience pursuant to section 1101 of the Code, thereby submitting its operation to the regulation and jurisdiction of the Pennsylvania Public Utility Commission (PUC).[2]

The facts of the case, in the light most favorable to the appellant, Vacation Charters, Ltd., are as follows.[3] Appellant owns a 2.2 mile long road (Moseywood Road) in Kidder Township, Carbon County. Before appellant acquired Moseywood Road in 1986, the road was in a state of disrepair. Appellant actively sought to dedicate the road for public use. Township, county and Commonwealth authorities refused to ordain Moseywood Road as a public road as it was

1. Section 102 of the Public Utility Code provides, in relevant part, as follows:
"Public Utility."
(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
(iv) Use as a canal, turnpike, tunnel, bridge, wharf, and the like for the public for compensation.
66 Pa.C.S.A. § 102.

2. It should be noted that there are currently no published regulations regarding those public utilities owning or operating facilities for "use as a canal, turnpike, tunnel, bridge, wharf or the like for the public for compensation." 66 Pa.C.S.A. § 102.

3. When reviewing a motion for summary judgment, the court is required to consider the entire record in the light most favorable to the party opposing the motion. 3 Goodrich Amram 2d § 1035(b):5.

primarily used as a private access road for property owners in the area of the Split Rock Resort.

When appellant acquired Moseywood Road, it leased the property to Summit Management and Utilities, Inc. which improved the road at a cost of approximately $310,000 and installed toll booths at each end of the road to collect nominal fees from automobiles and trucks entering the property. Resort property owners are assessed an annual fee for road maintenance and they receive two free passes for entry onto the property. Those desiring additional passes and others, such as vendors and contractors, may purchase yearly passes to enter the property in lieu of paying tolls. Moseywood Road is connected at one end to a township road and at the other end to a Commonwealth road. It is posted as a "Private Access Road" with a speed limit of twenty-five miles per hour. The toll booths are attended around the clock, but no individual reaching the toll booths in a vehicle and paying the posted fee is asked about his or her destination.

Appellee, PUC, entered an Order to Show Cause against appellant on August 19, 1988, alleging that appellant was providing public utility turnpike service without a certificate of public convenience. Appellant filed its answer denying that it was a public utility, and a pre-hearing conference was conducted before an administrative law judge. Appellee then filed a motion for summary judgment and appellant filed a cross-motion for summary judgment. The administrative law judge, finding no factual matters in dispute, concluded that appellant was operating a turnpike or toll road for the public for compensation without a certificate of public convenience and granted the relief requested by the appellee. Appellant's motion was denied. Both parties filed exceptions to the PUC from the ruling of the administrative law judge.[4] The exceptions of appellant were de-

4. Appellee was concerned that appellant would continue to refuse to comply with the order requiring it to file a certificate of public convenience and requested that the order of the administrative law judge be modified to include the imposition of daily fines of $250 in the event that appellant did not comply within a set time period.

nied, and the exceptions of the appellee were granted in part and denied in part. Appellant filed a petition for review to the Commonwealth Court which affirmed. 133 Pa.Cmwlth. 179, 575 A.2d 640. We granted appellant's petition for allowance of appeal, and we now reverse.

The Commonwealth Court, citing *McManus's Appeal,* 5 Pa.Super. 65 (1897), determined that the term "turnpike" is the equivalent of "public highway," and that appellant owns and operates Moseywood Road as a public highway for compensation and is thus operating a turnpike without a certificate of public convenience in contravention of the Public Utility Code. The Legislature has not defined the term "turnpike" in the Public Utility Code, thus the issue before this Court is what the Legislature intended by the use of that term and whether appellant operates Moseywood Road as a "turnpike ... and the like," within the meaning of the statute. 66 Pa.C.S.A. § 102.[5]

Historically, turnpikes were constructed and opened only upon the authorization of the Legislature. *People's Telephone and Telegraph Co. v. Berks and Dauphin Turnpike Road,* 199 Pa. 411, 49 A. 284 (1901). The private lands taken to construct a turnpike were taken by eminent domain and were thus required to be used for public purposes. *Erie & North-East Railroad v. Casey,* 26 Pa. 287 (1856). Turnpike roads were not constructed at public expense. The corporation or individual providing the funds to build turnpike roads merely had a franchise interest in taking the tolls to recover their construction and maintenance expenses and did not have any property interest in the roads themselves. *Id.* Application to the governor for permission to collect tolls could not be made until five or more miles of road had been satisfactorily completed. Act 26 January 1849, § 12, P.L. 16, Stroud & Brightly, *Purdon's*

5. Appellee urges the Court to adopt a dictionary definition of the term "turnpike." The Random House Dictionary of the English Language (2d Ed. Unabridged) defines "turnpike" as *"a high-speed highway,* esp. one maintained by tolls." (emphasis added) Moseywood Road is posted with a twenty-five mile per hour speed limit and clearly does not fit within the dictionary definition of "turnpike."

*Digest* (1854–1860), Turnpike, Bridge and Plank–Road Companies, § 24.

In light of the historical characteristics of turnpike roads in this Commonwealth, as formerly prescribed by the Legislature, it is clear that Moseywood Road is not a "turnpike ... or the like." 66 Pa.C.S.A. § 102. The construction and opening of Moseywood Road were not authorized by the Legislature. Private lands were not seized by eminent domain for purposes of constructing the road. Appellant owns the road and does not merely have a franchise interest in collecting tolls. The public does not have the *right* to enter appellant's property, and indeed, appellant has posted the road to inform the public that its road is a "Private Access Road." Finally, Moseywood Road does not even extend half the distance of those turnpike roads which, in 1849, could be officially licensed by the governor for the purpose of collecting tolls.

If we were to find in this case, that appellant is operating a turnpike road, most property owners charging a fee for entrance onto their property by means of a toll booth and gate, such as parking garage, amusement park, or resort owners, would be at risk of incurring burdensome civil and criminal penalties if they did so without first submitting to the regulation and jurisdiction of the PUC.[6] This is an absurd result that could not have been intended by our Legislature.

Appellant is not a public utility and is not required to file a certificate of public convenience with the PUC. Accordingly, we reverse the order of the Commonwealth Court.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

NIX, C.J., and McDERMOTT, J., concur in the result.

CAPPY, J., files a dissenting opinion which is joined by ZAPPALA, J.

6. Civil penalties and criminal penalties for violations of the Public Utility Code are set forth at 66 Pa.C.S.A. §§ 3301 and 3302.

CAPPY, Justice, dissenting.

I dissent. Vacation Charters, Ltd. is operating as a "public utility" within the meaning of the Public Utility Code, 66 Pa.C.S. § 101 et seq.

Vacation Charters, Ltd. owns and operates Moseywood Road, which is two miles long and has toll booths at both ends. Any member of the general public who pays the required toll is granted unrestricted access to Moseywood Road and may use it to satisfy transportation needs not associated with the private resort area. It is amply clear from the record that Moseywood Road is used as a major artery to access township and state roads, particularly during ski season.

66 Pa.C.S. § 102 defines a "public utility" as:

(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:

*    *    *    *    *    *

(iv) Use as a canal, turnpike, tunnel, bridge, wharf, and the like for the public for compensation.

In *Drexelbrook Associates v. Pennsylvania Public Utility Commission*, 418 Pa. 430, 212 A.2d 237 (1965), this Court held that the definition of "public utility" hinges upon whether a service is furnished "to or for the public." *Id.*, 418 Pa. at 439, 212 A.2d at 241. Access to Moseywood Road clearly falls within this definition, as it permits every member of the general public the same right to use the toll road without being questioned concerning their destination.

Nevertheless, the majority finds that Moseywood Road does not qualify as a turnpike for purposes of Section 102. They conclude that, since the Legislature has not defined "turnpike" in the Public Utility Code, the definition of "turnpike" is controlled by the historical characteristics of turnpikes, which traditionally involve action by the Legislature and the taking of private lands for public purpose.

While I agree that traditionally, turnpikes have possessed such characteristics, absent more guidance from the Legis-

lature, I do not believe that this provides a sufficient basis to conclude that Moseywood Road is not a turnpike for purposes of Section 102. I believe it is the fact that Vacation Charters, Ltd. charges a toll to use a highway open to the general public without limitation on user destinations that controls this determination, and not the manner in which the toll road is obtained, financed or constructed.

I simply cannot disregard the practical aspects of this toll road operation merely because Vacation Charters Ltd. designed Moseywood Road for resort area use and designated it a "private access road," as such would pay homage to form over substance. Furthermore, I consider the government's refusal to accept dedication of this road for public use irrelevant to the question of whether this road is a "turnpike" for purposes of the Public Utility Code.

Until such time as the Legislature deems it appropriate to expressly provide a definition of "turnpike," I will define it simply as a highway open to the general public without limitation on user destinations upon payment of a toll. Moseywood Road is no different than those dirt toll roads of old requiring payment of a nickel or dime to pass on horse and buggy.

Accordingly, I would affirm the decision of the Commonwealth Court, and require Vacation Charters, Ltd. to obtain a Certificate of Public Convenience to operate Moseywood Road pursuant to 66 Pa.C.S. § 1101.

ZAPPALA, J., joins in this Dissenting Opinion.